The People *v.* Jones.

———————

The People *vs.* Pomeroy Jones and others.

The duties devolved upon commissioners of excise by the "act to suppress intemperance and to regulate the sale of intoxicating liquors," (*Laws of* 1857, *ch.* 628,) call for the exercise of discretion and judgment, and are, to some extent, discretionary and judicial.

The commissioners cannot be coerced in the exercise of their discretion, by mandamus or otherwise, and for a mere mistake are not liable, either civilly or criminally. But for an unlawful and corrupt exercise of the powers vested in them, they are answerable criminally.

They cannot willfully and knowingly violate the law with impunity; and while they are only responsible for good faith and integrity, they cannot, from corrupt motives, either grant or withhold a license improperly, and shield themselves under the judicial character of their office.

The words "inn, tavern or hotel," contained in the act of 1857, are used synonymously, to designate what is ordinarily and popularly known as an inn or tavern, or place for the entertainment of travelers, and where all their wants can be supplied. The words "inn or tavern" were so used in the prior corresponding enactments.

To constitute an inn-keeper, a tavern-keeper, or hotel-keeper, the party so designated must receive and entertain as guests those who choose to visit his house. A restaurant, where meals are furnished, is not an inn or tavern. *Per* Allen, J.

It by no means follows that because the place was an unfit place for a tavern, or the license was improvidently or improperly granted, the commissioners of excise were necessarily guilty of a criminal offense in granting a license.

To constitute an offense, the license must have been granted with full knowledge of the facts, and willfully.

The offense consists in the motive and intent with which the act was done.

The People *v.* Jones.

The mere granting of a license which a court or jury might say ought not to have been granted, is not an offense; but the jury must be able to say, from the evidence, that the commissioners, or such as are pronounced guilty, knew, at the time, that it was not a proper case for a license under the statute, and nevertheless granted it, in willful disregard of the statute; that is, that they knowingly and purposely disregarded the statute.

If they acted in good faith, though erroneously, they cannot be punished.

They have the power to do the act, and only a criminal intent can make the act criminal, although erroneously done.

On the trial of an indictment against commissioners of excise, for willfully, unlawfully and corruptly granting a tavern license, the court charged the jury, in substance, that if they should find that the defendants knew the character of the place licensed, yet if they believed, from the evidence, that the defendants thought the place a fit and proper one to be licensed as a tavern, under the statute, they should acquit; but if the jury, from the evidence, believed that the defendants did not consider the premises in question fit and proper to be thus licensed, but willfully and corruptly licensed the same, in violation of the statute, they should find the defendants guilty; *Held* that this portion of the charge was correct.

But that it was erroneous to charge the jury that if the act was unlawful; that is, if the license ought not to have been granted, under the statute, and the defendants intended to do the act, viz., to grant the license, they should be convicted; that they could not shield themselves because they did not suppose the act was in violation of law, or because they mistook, or were ignorant of the law, or because they supposed they were acting according to the statute.

THIS case came before the court on a bill of exceptions removed by certiorari from the court of general sessions of Oneida county. The defendants, commissioners of excise in that county, were indicted for willfully, unlawfully and corruptly granting a tavern license to one George A. Allen, of the city of Utica. Allen kept a drinking saloon at the city garden in Utica, in rear of a store on Genesee street, only accessible from the street through an alley or arched passage way, six feet wide by twelve feet high. The only bed in the building was one occupied by the attendant, in a stall or box six feet by five in size, and which had been put up as a place for eating, when the building was used as an eating saloon. The building never had any accommodations for travelers,

The People *v.* Jones.

and travelers never were accommodated there. On the trial it appeared that one of the commissioners personally inspected the premises before granting the license. The license was applied for upon the petition of twenty freeholders of the city, and a certificate was produced, addressed to the excise board, in addition to this petition, signed by the mayor and several of the most respectable and influential citizens of Utica, certifying that Allen had kept a "quiet, orderly and respectable house," and that they believed "that he should be licensed." The prosecution gave in evidence, under objection, a letter addressed to, and received by, the defendants, before granting the license, from a prominent gentleman in Utica, stating certain objections to the license of Allen, and, among other things, stating that his place was a "mere saloon." The question was put by the prosecution to Allen, while he was under examination as a witness, "Did you keep any beds or bedding there, for the accommodation of travelers?" which was objected to and the objection overruled, and the answer was in the negative. The court charged the jury that one question was, whether the place kept by Allen was an inn, tavern or hotel, within the intent and meaning of the excise act; to which the defendants excepted. The jury were also charged that it was for them to say whether the evidence in the case showed that the place in question had the characteristics of an inn or tavern; to which there was also an exception. And after charging, in substance, that if the jury should find that the defendants knew the character of the place licensed, yet if they believed from the evidence that the defendants thought the place a fit and proper one to be licensed as a tavern, under the statute, they should acquit; but if the jury, from the evidence, believed that the defendants did not consider the premises in question fit and proper to be thus licensed, but willfully and corruptly licensed the premises in violation of the statute, they should find the

The People *v.* Jones.

·defendants guilty; and submitting that question to the jury, proceeded to charge them, as stated in the bill of exceptions, "by way of general propositions," "that if the act which the defendants did, in granting the license in question, was unlawful or in violation of the statute, and the defendants intended to do the act, they could not shield themselves, or escape conviction because they did not suppose that act was in violation of the law." To which the defendants excepted. Also, "that ignorance of, or mistake of, the law is no excuse or defense; that if the act which the defendants did, in granting the license in question, was unlawful, or in violation of law, and the defendants intended to do the act, they could not shield themselves because they mistook or were ignorant of the law;" to which there were was also an exception. Also, " that if the defendants did know the true character and condition of the place kept by Allen, before or at the time the same was licensed, it was no excuse or defense that in granting the license they supposed they were acting according to the statute, if in fact the place kept by Allen was one which, according to the statute, could not be lawfully licensed." And to this proposition there was an exception.

The jury rendered a verdict of guilty against all the defendants, and judgment was stayed, and the proceedings removed into this court by certiorari.

·*F. Kernan,* for the defendants.

*H. T. Jenkins,* (district attorney,) for the people.

*By the Court,* ALLEN, J. The duties devolved upon commissioners of excise by the "act to suppress intemperance and to regulate the sale of intoxicating liquors," (*Laws of* 1857, *ch.* 628,) call for the exercise of discretion and judgment, and are, to some extent, discretionary and

The People *v.* Jones.

judicial. The commissioners cannot be coerced in the exercise of their discretion, by mandamus or otherwise, and for a mere mistake are not liable either civilly or criminally. But for an unlawful and corrupt exercise of the powers vested in them they are answerable criminally. They cannot willfully and knowingly violate the law with impunity; and while they are only responsible for good faith and integrity, they cannot from corrupt motives either grant or withhold a license improperly, and shield themselves under the judicial character of their office. The law is well guarded, and is distinct and plain in its provisions regulating the duties of the commissioners in the granting of licenses; and the legislature intended to, and I think have, hedged it about with all practicable safeguards necessary to secure all the requisite accommodations for the traveler, and at the same time protect the public against a flood of mere tippling-houses and nurseries of intemperance—drinking places not connected with a place for the legitimate entertainment of travelers. Whether the law, or any law distinguishing between the traffic in intoxicating drinks and other commodities, is wise or unwise is not for us to decide. The legislature is supreme in its action on that subject, and we have only to give effect to the laws as they are enacted. It was said by the court of King's Bench, in the last century, that "the mischief of granting a license improperly was infinitely greater than that of refusing one; for in the former case it might be productive of injury to the whole community, while in the latter the grievance was felt only by the individual." (*King* v. *Holland*, 1 *T. R.* 692.) A criminal information was sustained in that case for granting a license to an improper house. Lord Mansfield, in *Rex* v. *Young*, (1 *Burr.* 560,) speaking of the discretionary power vested in commissioners of excise, says: "But though discretion does mean (and can mean nothing else but) exercising the best of their judgment upon the occasion

that calls for it, yet if this discretion be willfully abused it is criminal, and ought to be under the control of this court." The information in that case was refused, because the justices had "acted both honestly and legally in refusing to grant the license in a place where there was already a sufficiency."

An indictment for willfully and corruptly granting a license to a person to sell spirituous liquors as an innkeeper, the commissioners knowing that the applicant was not a man of good moral character, nor a person of sufficient ability to keep a tavern, was sustained, on demurrer, in *The People* v. *Norton*, (7 *Barb.* 477,) and the reasoning of Judge Willard is entirely conclusive. And see, to the same effect, *The State* v. *McDonald*, (4 *Harr.* 555,) and *Russell on Crimes*, 116. The act of 1857 (*supra*, § 6) absolutely prohibits the granting of a license to any person to sell strong and spirituous liquors to be drank on his premises, "unless such person proposes to keep an inn, tavern or hotel, and unless the commissioners are satisfied that the applicant is of good moral character; that he has sufficient ability to keep an inn, tavern or hotel, and the necessary accommodations to entertain travelers, at the place where such applicant resides or proposes to keep the same." And the same statute (§ 8) requires every keeper of an inn, tavern or hotel in a city to keep at least three spare beds, and the necessary bedding, for the accommodation of travelers." The terms "inn, tavern or hotel," mentioned in the statute, are used synonymously, to designate what is ordinarily and popularly known as an inn or tavern, or place for the entertainment of travelers, and where all their wants can be supplied. The words "inn or tavern" were so used in the prior corresponding enactments. (1 *R. S.* 679, § 10. *Overseers of the Poor of Crown Point* v. *Warner*, 3 *Hill*, 150.) A "hotel" is an inn or house for entertaining strangers or travelers. An "inn" is a house for the lodging and entertainment of travelers.

The People *v.* Jones.

In America, Webster says it is often a tavern where liquors are furnished to travelers or others. " Tavern," the same lexicographer says, is, in some of the United States, synonymous with inn or hotel, and denotes a house for the entertainment of travelers, as well as the sale of liquors. (*See Webster's Dic.*) Bouvier defines an " inn " as a house where a traveler is furnished with every thing he has occasion for while on his way; and he gives substantially the same definition of a " tavern." *Bouvier's Law Dic.*) To constitute an inn-keeper, a tavern-keeper, or hotel-keeper, the party so designated must receive and entertain as guests those who choose to visit his house; and a restaurant where meals are furnished is not an inn or tavern. (*Wintermute* v. *Clark,* 5 *Sandf.* 242. *Carpenter* v. *Taylor,* 1 *Hilt.* 193.)

It is very evident that the place of Allen was not an inn, tavern or hotel, and could not have been connected with one, and that he had not the ability at that place to keep a tavern with the necessary accommodations for travelers, or in any way to comply with the statute; and there is no pretense that he proposed, or that it was expected, to use his license at any other place. It is equally evident that a tavern was not required for the accommodation of travelers, at that place; and that the license was not wanted for the convenience of a house of entertainment for travelers. But it by no means follows that because the place was an unfit place for a tavern, or the license was improvidently or improperly granted, the defendants were necessarily guilty of a criminal offense in granting the license. To constitute an offense the license must have been granted with full knowledge of the facts, and willfully. (*See King* v. *Holland, supra.*) The offense consists in the motive and intent with which the act was done. The mere granting of a license which a court or jury might say ought not to have been granted, is not an offense; but the jury must be able to say, from the evidence, that the commissioners,

or such as are pronounced guilty, knew, at the time, that it was not a proper case for a license under the statute, and nevertheless granted it in willful disregard of the statute; that is, that they knowingly and purposely disregarded the statute. If they acted in good faith, although erroneously, they cannot be punished. (*Commonwealth* v. *Bradford*, 9 *Met.* 268.) It is not like the case of an absolute want of power to do the act, as in *Rex* v. *Sainsbury*, (4 *T. R.* 451;) or where a positive duty is imposed by law upon an officer, as in *The People* v. *Brooks*, (1 *Denio*, 457.) Here the defendants had power to do the act, and only a criminal intent could make the act criminal, although erroneously done. The main proposition in the charge was, upon this view of the law, correct; but for "the general propositions" which followed it there would have been no error, I think, for which the conviction should be reversed, although one or more of the other parts of the charge might have been somewhat more explicit. I understand the court to have instructed the jury that if the act was unlawful; that is, if the license ought not to have been granted, under the statute, and the defendants intended to do the act, that is, to grant the license, they should be convicted. The charge was that they could not shield themselves because they did not suppose the act was in violation of law, or because they mistook or were ignorant of the law, or because they supposed they were acting according to the statute. This was in effect placing the jury in the place of the commissioners, to review their decision, and if it was found out to have been warranted by the statute they were to convict; for that the commissioners signed the license intentionally and voluntarily was not disputed; and this was the only other fact necessary to a conviction. It is true this is in direct conflict with the other portions of the charge, but it is in the bill of exceptions, and is not a correct exposition of the law, and we are not at liberty to speculate whether it did or

did not mislead the jury. In this part of the charge the principles of *Rex* v. *Sainsbury* and *The People* v. *Brooks*, where a positive law was violated and a positive duty neglected, and where the intent was a legal presumption, were applied to this case where the law gave a discretionary power, and the intent and motive was all important, and was the question of fact to be passed upon by the jury. As bearing upon this, the knowledge by the defendants of the place and all its surroundings, and its previous history, the communications from others and all the circumstances, were relevant and competent as evidence.

For this error in the charge the conviction must be reversed, and a venire *de novo* awarded to the sessions of Oneida county.

[OSWEGO GENERAL TERM, July 14, 1863. *Allen, Mullin, Morgan* and *Bacon,* Justices.]