EDWIN S. SMITH, Plaintiff in Error, v. THE PEOPLE OF
THE STATE OF NEW YORK, Defendants in Error.

*Excise law — chap. 175 of 1870 — construction of chap. 628 of 1857.*

One to whom a license has been granted, in pursuance of section 4 of chapter 175
of 1870, is authorized to sell intoxicating liquors to be drank upon the premises.
The provisions of the act chapter 628 of 1857, conferring upon the keepers of inns
and taverns the particular and exclusive right to sell, by small measure, liquors
to be drank upon the premises is repealed by the act of 1870.
*O'Rourke* v. *The People* (3 Hun, 225) distinguished.

Writ of error to the Court of Sessions ·of Jefferson county, to
review the conviction of the plaintiff in error of a violation of the
excise law.

*Thomas F. Kearns*, for the plaintiff in error.

*Watson M. Rogers*, district attorney.

E. Darwin Smith, J. :

The plaintiff in error was indicted for selling strong and spiritu-
ous liquors to be drank upon his premises without having obtained
an inn-keeper's, hotel or tavern license, and was upon trial in the
Sessions of Jefferson county, convicted of such offense and sen-
tenced to be fined $150 and imprisoned·till such fine was paid. On
the trial it appeared that he had duly applied to the commissioners
of excise of the city of Watertown where he resided, and had
obtained in due form a license permitting him to sell and dispose of
strong and spirituous liquors, wines, ale and beer in quantities less
than five gallons at a time, at a place designated in said license and
within said city, and he had fully complied with all the provisions
of the statute regulating the sale of intoxicating drinks, passed
April 11, 1870, in respect to such license. (*Vide*, chap. 175, Sess.
Laws, 1870, p. 456.) It was held by the presiding judge, and stated
in his charge to the jury, that such license did not authorize the
sale by the defendant of intoxicating liquors to be drank upon the
premises, and was no protection or justification to him for the sales
laid in the indictment. In this ruling and decision I think the
learned judge was clearly mistaken. The defendant's license was
applied for and given under section 4 of the act of 1870, aforesaid,

which, so far as is material to the question presented, is as follows: "The board of excise in cities, towns and villages shall have power to grant licenses to any person or persons of good moral character who shall be approved by them, permitting him and them to sell and dispose of, at any named place within such city, town and village, strong and spirituous liquors, wines, ales and beer, in quantities less than five gallons at a time, upon receiving a license fee to be fixed in their discretion, which shall not be less than thirty dollars nor more than $150." This provision is a clear and explicit authority to the commissioners of excise of every city, town and village in this State to grant a license to any person or persons, without distinction, exception, or qualification, except that of good moral character, approved by them, to sell and dispose of, at any one place named, in such city, town or village, strong and spirituous liquors, wines, ale and beer in quantities less than five gallons.

The defendant was a person or citizen of this State; he applied in due form and obtained this license thus authorized and allowed; he had under it the grant and authority of the State, so far as the legislature could confer it, to sell strong and spirituous liquors, wines, ale and beer on his premises, at the place designated in his license, in quantities less than five gallons. In the absence of any restriction he clearly might sell at such place, to be drank on his premises. The language of the statute and the grant of power under and by the license obtained by him, it seems to me is too clear and explicit for discussion or misconstruction. It is express and absolute, and utterly unqualified, both as to the persons to whom sales should be made or the place where such liquors should be drank. This act of 1870, was obviously intended to change the law in regard to the sale of intoxicating drinks, and introduce a new law and a new system or rule, and not amend an old law. By section 6 of. said act, all the provisions of the act of 1857 (chap. 628, Sess. Laws, 405), not inconsistent with said act, are retained, but all provisions of such act of 1857, inconsistent therewith, are necessarily superseded and repealed. This repeal necessarily applies to all the restrictive provisions of the act of 1857, relating to inns and taverns, so far as such provisions confer upon the keepers of such inns and taverns the particular and exclusive right to sell, by small measure, liquors to be drank on their premises. Such

particular privileges, restriction, or discrimination in favor of tavern or inn-keepers are repugnant to, and inconsistent with the provisions and purpose and intent of such act and its whole scope and meaning. The same inconsistency exists also in respect to the provisions in the act of 1857 that require a license for store-keepers or others to sell such liquors in quantities less than five gallons, but not to be drank or used on the premises. These provisions are repealed, and no such license is longer necessary. No license is required for the sale of intoxicating drinks of any kind, except the license prescribed and allowed by section 4 of said act of 1870. The general provisions of the act of 1857 applicable to persons having a license to keep inns or taverns, so far as they are not inconsistent with such act, still apply to persons having license under the act of 1870, and the penalties imposed for any violations of the said law, or selling without a license when by this act of 1870 a license is required to sell in small quantities, are all retained and remain in full force. The act of 1870 is the last emanation and expression of the legislative will in respect to the sale of intoxicating drinks, and is necessarily controlling, conclusive and exclusive upon the subject, except where it distinctly retains the old law. It prescribes a single form of license for tavern-keepers, grocers and store-keepers, and all other persons asking a license to sell intoxicating drinks. As the law stood under the act of 1857, confessedly no person could sell intoxicating liquors in small quantities, to be drank on his premises (except ale and beer, under the act of 1869), without an inn-keeper's or tavern license, as prescribed by said act.

Such was the express prohibition of section 6 of said act. It needed no new law to secure that end. If these provisions in the act of 1857 are retained in force by section 6 of the act of 1870, such act is perfectly meaningless.

Is it to be supposed, if legislation is to be considered as the result of deliberate and rational intention and purpose on the part of the legislators, that when they passed section 4 of the act of 1870, giving authority to the excise commissioners to license any person to sell strong and spirituous liquors, wines, ale and beer, in any place to be designated in the license, they intended by said section 6 of the same act, wherein they retained the provision of the act of 1875 not inconsistent therewith, to re-enact in effect that said

section 4 and the license therein authorized should be utterly ineffectual, and that there should be re-ingrafted upon it or re-imposed by construction the precise prohibitory provisions of the act of 1857, which it was the purpose of the act to supersede, and thus to render such act perfectly abortive, a snare and a delusion? Such I think was not the intention of the legislature. This I think is apparent from the occasion for the act as well as from its terms. From the earliest history of the State down to the passage of the prohibitory act of 1855, there were two classes of licenses for the sale of intoxicating liquors, one to inns and taverns, and one to merchants, store-keepers or grocers, to sell in quantities less than five gallons, but not to be drank upon the premises of the person having such license. After the prohibitory law of 1855 was declared unconstitutional, the legislature returned to the old law and re-enacted the same in substance in 1857, with other provisions. Under this act tavern or inn-keepers' licenses were given, in many cases, to the keepers of groceries, restaurants or saloons where there was no preparation or accommodation to keep an inn or tavern, for which commissioners of excise were, in many cases, indicted and held liable to be punished criminally. ( *Vide People* v. *Jones*, 54 Barb., 311.) The strictness of this act in its application to the large class of persons in the city of New York engaged in keeping restaurants, saloons, oyster-houses, and other places for refreshments, induced the legislature, in 1866, to except the city of New York from its provisions entirely, and to enact for that city an act entitled "An act to regulate the sale of intoxicating liquors within the metropolitan police district of the State of New York," passed April 14, 1866. (2 Sess. Laws, 1242, chap. 578.) Section 4 of that act authorized the board of excise of such city to grant licenses to any person of good moral character and who shall be approved by them, permitting him or them, for one year from the time the same was granted, to sell and dispose of, at any one place named in said city, strong and spirituous liquors, wines, ale and beer, in quantities less than five gallons, upon receiving a license fee therefor, which should not be less than thirty dollars nor more than $250. The act contained other provisions, making a complete system for that city, forbidding the sale of such liquors on Sunday, and on any day of a general or city election which should be held within one-quarter of a mile from the place where

the same was sold, and other provisions of the act of 1857. In 1869, the legislature also relaxed the strict provision of the act of 1857, inhibiting a license to sell intoxicating drinks upon his premises to any person not proposing to keep an inn or tavern, by allowing a license to be given for the sale of ale and beer. (Act of 1869, chap. 680.) So the law stood in 1870, when the act of that year passed. This act adopts in substance the leading features of the said metropolitan police act, and applies and extends them to the whole State. Section 4 of the act of 1870 is, as will be seen in the precise language — *in totibus verbis.*— of section 4 of said metropolitan police act, and said section 4 of the act of 1870 incorporates also section 8 of said metropolitan act of 1866, as follows : " Persons not licensed may keep, and in quantities not less than five gallons at a time, sell and dispose of strong and spirituous liquors, wines, ale and beer, provided that no part thereof shall be drank or used in the building, garden or inclosure communicating with, or in any public street or place contiguous to the building in which the same is kept, disposed of or sold." This provision, in section 4 of the act of 1870, clearly implies that the liquors to be sold under the license allowed in said section, were or might be drank on the premises. It is a new provision first passed in the said metropolitan act and inserted therein, obviously because it was understood and intended that the licenses therein allowed should, as they did, give authority to sell the liquors named, and in the quantity named, upon the premises of the person holding such license. Said metropolitan act was clearly passed to secure that object and relieve the city of New York from the prohibitory and strict provisions of the act of 1857, in respect to inns, taverns and store-keepers, or grocers. But further, the said act of 1870, also borrowed from the said metropolitan act, the provisions in section 5 of said act, as follows: " License granted as in this act provided shall not authorize any person or persons to expose for sale, or sell, or give away, or dispose of any strong or spirituous liquors, wines, ale or beer on any day between the hours of one and five o'clock in the morning, and all places licensed as aforesaid shall be closed between the hours aforesaid." These provisions quite obviously have respect solely to the sale of liquors in small quantities, to be drank on the premises, and clearly imply that the legislature expected and intended to allow such sales

to take place. The restriction of sales in the late hours of the night, and the closing of the places where such liquors were expected to be sold, would never have been inserted to restrict store-keepers or other large dealers in the sale of merchandise or liquors to be removed immediately from the premises. Of what consequence was it to the public how late a merchant kept open his store, or why should he be required to close it between the hours of one and five in the morning, and keep it closed during those hours? And the same consideration applies to the restrictions incorporated in said act in respect to the sale of liquors on election day (as amended in 1873, Session Laws, chap. 549, p. 859), and on Sundays.

The case of *O'Rourke* v. *The People* (5 N. Y. Sup. Ct. R., 496; and same case in 3 Hun, 225), to which we have been referred, is not in conflict with these views. That was a case where the defendant was indicted and convicted for selling *ale*. He had a license under the act of 1870, which clearly authorized him to sell ale and beer, under the act of 1869; and this was so held, and quite correctly, as an amendment of the law of 1857, as it professedly was designed and intended to be. The decision of this question did not call for a decision whether the act of 1870 authorized the sale of strong and spirituous liquors to be drank on the premises, without a license to keep an inn or tavern, as required in section 6 of the act of 1857. In this case the question is different. The defendant sold strong and spirituous liquors, and was properly convicted if his license under the act of 1870 was not to him a justification and protection. The conviction in this case, and also in another case — *The People* v. *Vosburgh* — now pending before us, where, upon precisely the same ground, a similar conviction and sentence was had in the Court of Sessions of Seneca county, were doubtless based upon the opinion of one of the judges in the case of *O'Rourke* v. *The People* (*supra*). But that opinion was not concurred in by the whole court and the decision of that case was, as we have seen, put upon other grounds. The judgment and conviction in this and the other case mentioned should both be reversed, and the prisoners discharged.

Present — MULLIN, P. J., SMITH and TALCOTT, JJ.

Judgment and conviction reversed and prisoners discharged.