[Filed June 1, 1886.]

LOUIS COOK *v.* A. J. KANE AND D. W. PRENTICE.

INNKEEPER—LIEN OF.—An innkeeper has a lien upon the property of his guest, and upon the goods put by the guest into his possession, as a security for his unpaid charges.

SAME—PROPERTY OF THIRD PERSONS.—Such lien will attach to the property of third persons in the hands of the guest as bailee, which comes to the hands of the innkeeper by virtue of the innkeeping relation, unless he knew the property was not owned by the guest.

SAME.—Where a piano, the property of a stranger, was shipped to the defendant in his name, and was at his request, and upon his order, put in the possession of an innkeeper, and kept by him as the property of the defendant, his guest, the innkeeper has a lien upon the piano for the unpaid charges of the guest. THAYER, J., dissenting.

BAKER COUNTY. Defendant Prentice appeals. Affirmed.

*William M. Kaiser,* for Appellant.

*William M. Ramsey and G. G. Bingham,* for Respondent.

LORD, J.   This suit was instituted by the plaintiff, as
an innkeeper, to enforce a lien against a piano, put in
his possession by the defendant as his guest, for a debt
due for lodging and entertainment.   By the facts stipu-
lated, it is admitted that the relation of innkeeper and
guest existed between the plaintiff and defendant when
the plaintiff, at the request of the defendant, paid the
freight charges on the piano, and took it into his cus-
tody; that the piano was in fact the property of a third
person, who had consigned it to the defendant to sell on
commission, but that the plaintiff did not know it was
the property of such third person, but received it in his
character as an innkeeper and as the property of his
guest.   Upon this state of facts, we are to inquire whether
the piano is chargeable with an innkeeper's lien for board
and lodging furnished his guest.

At common law, the liability of an innkeeper for the
loss of the goods of his guest is special and peculiar, and
like that of the common carrier, is founded on grounds
of public policy.   It must not, however, be confounded
with that of a common carrier; the liabilities, though
similar, are distinct.   (*Clark* v. *Burns*, 118 Mass. 275;
Schouler on Bailments, 259.)   Whatever controversy
may exist in the judicial mind as to the true measure of
the innkeeper's responsibility,(it cannot be denied that
his liability for the loss of the goods of his guest is ex-
traordinary and exceptional.)  (Schouler on Bailments,
261, and notes;  *Coggs* v. *Bernard*, 1 Smith's Lead. Cas.,
Am. Notes, 401.)   (Compelled to afford entertainment to
whomsoever may apply) and behave with decency, the
law, as an indemnity for the extraordinary liabilities
which it imposes, has clothed the innkeeper with ex-
traordinary privileges.   It gives him, as a security for
unpaid charges, a lien upon the property of his guest, ·
and upon the goods put by the guest into his possession. ·

(Overton on Liens, 129.) Nor is the lien confined to property only owned by the guest, but it will attach to the property of third persons for whom the guest is bailee, provided only he received the property on the faith of the innkeeping relation. (Schouler on Bailments, 292; *Calye's Case,* 1 Smith's Lead. Cas. 247; *Manning* v. *Hollenbeck,* 27 Wis. 202.) But the lien will not attach if the innkeeper knew the property taken in his custody was not owned by his guest, nor had any right to deposit it as bailee or otherwise, except perhaps some proper charge incurred against the specific chattel.

In *Broadwood* v. *Granerd,* 10 Exch. 417, the innkeeper knew that the piano sent to the guest did not belong to him, and did not receive it as part of the guest's goods; and it was on that ground alone he was held not entitled to his lien. But in *Threfall* v. *Borwick,* L. R. 7 Q. B. 210, where the innkeeper had received the piano as part of the goods of his guest, it was held he had a lien upon it. Miller, J., said: "When, having accommodation, he has received the guest with his goods, and thereby has become liable for their safe custody, it would be hard if he was not to have a lien upon them. And under such circumstances, the lien must be held to extend to goods which he might possibly have refused to receive." Lusk, J., said: "I am of the same opinion. The innkeeper's lien is not restricted to such things as a traveling guest brings with him in journeying; the contrary has been laid down long ago. It extends to all goods the guest brings with him and the innkeeper receives as his. If he has this lien as against the guest, the cases have established beyond all doubt that he has the same right as against the real owner of the article, if it has been brought to the inn by the guest as owner." To the same effect, Quain, J., said: "There is no authority for the proposition that the lien of the innkeeper only extends

to goods which a traveler may be ordinarily expected to bring with him. . . . . The liability, as shown by the old cases, extends to all things brought to the inn as the property of the guest and so· received, even a chest of charters or obligations; and why not a pianoforte? If, therefore, the innkeeper be liable for the loss, it seems to follow he must also have a lien upon them. And if he has a lien upon them as against the guest, the two cases cited (and there are more) show that if the thing be brought by the guest as owner, and the landlord takes it in thinking it is the guest's own, he has the same rights against the stranger, the real owner, as against the guest." Upon appeal from the decision of this case, in *Threfall* v. *Borwick*, L. R. 10 Q. B. 210, it was held, affirming the decision, that whether the defendant, as innkeeper, was bound to take in the piano or not, having done so, he had a lien upon it. Although there are certain *dicta* not necessary to the decision in *Broadwood* v. *Granard*, 10 Exch. 417, to the effect that the innkeeper was not bound to receive the piano, yet the real ground of the decision was based on the fact that the innkeeper knew that the piano sent to his guest was the property of a third person, and did not, therefore, receive it as part of his guest's goods, that the right to subject the piano to his lien was denied; but *e converso,* if he had not known the piano was the property of a third person, and had received it as the property of his guest, would not his lien have attached? It is not material whether the innkeeper is bound to receive such property, or not, although it is said the liability may be well extended, according to the advanced usages of society; yet if he does receive as the property of his guest, and thereby becomes liable for it, he must be entitled to his lien. (*Threfall* v. *Borwick, supra.*)

Whenever, by virtue of the relation of innkeeper and

guest, the law imposes this extraordinary responsibility for the goods of the guest, it gives the innkeeper a corresponding security upon the goods put by the guest into his possession. It is true that the piano was shipped to the defendant in his name, but he brought it to the inn as his property, or at least it was brought there at his request and upon his order, and put in the custody and possession of the plaintiff as the property of his guest. It is admitted that the plaintiff received it as an innkeeper, and safely kept it as the property of his guest; nor is it doubted but what he would have been liable for its loss; and in such case, it is difficult to perceive upon what principle of law or justice he can be denied his lien. The judgment must be affirmed.

WALDO, C. J., concurring.

THAYER, J. (dissenting). It appears from the transcript herein that the respondent, on or about the twelfth day of September, 1885, commenced a suit in said Circuit Court against one A. J. Kane, to subject a certain piano to the payment of a claim against him in favor of the said respondent. The respondent alleged in his complaint in the suit that he was a hotel-keeper in Baker City in said county; that in May, 1885, Kane became a guest at his hotel, was furnished with meals, food, and lodging of the reasonable value of $160, which had not been paid; that on the third day of July, 1885, while Kane was such guest, the respondent, at his request, took the piano into charge, then in the freight office of the Oregon Railway and Navigation Company at said city, consigned to Kane as his property; and at Kane's request placed it in the hotel, where he had ever since had it in charge; that Kane was wholly impecunious and insolvent; that during all of said times Kane claimed

the lawful possession of the piano; that he was no longer a guest of respondent, and that the respondent claimed a lien on the piano for said sum of $160; that on the third day of July, 1885, at the request of Kane, the respondent advanced to the said Oregon Railway and Navigation Company, as freight transportation and charges, $14.50, which Kane had not paid, and that during the same time he loaned to Kane $12.50. The respondent demanded, as relief, a judgment against Kane for the sum of $160, and for the further sum of $26.75, and that he be decreed to have a lien upon the piano for said sums, and that it be sold, and the proceeds be applied in payment thereof. It further appears that on or about the twenty-eighth day of September, 1885, the appellant D. W. Prentice appeared before the said court and applied to intervene in the suit; and that the court, upon such application, granted an order permitting the appellant to file an answer to the complaint, which was filed accordingly; that the appellant denied in his answer that the indebtedness of Kane was any greater sum than $140; and alleged ownership of himself in the piano, and that he was entitled to the possession of it; that he had demanded it, and the respondent wrongfully detained it; that Kane had never been the owner of the piano; that it was shipped and consigned to Kane to sell on commission; and that the only right or interest Kane had in it, or ever had, was in the commission to be derived from the sale of it, of which the respondent had full knowledge; that respondent claimed to keep it upon an alleged lien for the payment of a debt due him as hotel and inn keeper for board and lodging furnished Kane, and money loaned to him; admitted the payment by respondent of $14.50 for the charges for freight and transportation of the piano, and alleged that before filing his answer he had tendered it to him; and

alleged other matters not necessary to be mentioned for the purposes of this decision.

After the filing of said answer, the parties entered into a stipulation, in which they agreed that for the purpose of the determination of the suit, the issues should be taken and considered as fully made as though reply had been filed, and that no objection should be made to the manner or form of the pleadings; that the court should hear and determine, and enter its decree in the case upon the following agreed facts:

"1. That defendant A. J. Kane became indebted be-- tween the —— day of May, 1885, and September 11, 1885, to plaintiff, in the sum of $140, for board and lodg- ing furnished said Kane by plaintiff, as a hotel and inn keeper, at Baker City, Oregon, and in the further sum of $12.50, money loaned said Kane by plaintiff, between May 28 and August 3, 1885, no part of which has been paid.

"2. That said defendant Kane continued to be the guest of said plaintiff at his said hotel at Baker City, Ore- gon, until September 11, 1885, when he left said plain- tiff's hotel and inn, and that said Kane is impecunious and wholly insolvent.

"3. That on the third day of July, 1885, plaintiff took into his charge and custody and control one upright D. W. Prentice piano, No. ——, mentioned in complaint, with the consent of A. J. Kane, and at his request; that the same was placed in the parlor of said plaintiff's hotel and inn, where it ever since has been and now is; that the said instrument is of the value of $380.

"4. That said piano was shipped to Baker City, Oregon, consigned to defendant A. J. Kane, and in his name, by D. W. Prentice, to be sold by said Kane on commission.

"5. That said A. J. Kane is not now, and never was, the owner of said piano, and the only right he had therein

was to sell the same, and retain his commission out of the gross amount.

"6. That D. W. Prentice has always been, and now is, the owner of said piano mentioned in the complaint.

"7. That plaintiff paid freight charges on said piano to the Oregon Railway and Navigation Company, at the request of said Kane, the sum of $14.50.

"8. That said D. W. Prentice, before the filing of the answer herein, demanded the possession of said piano from plaintiff, which was refused by plaintiff, and that said Prentice offered to plaintiff the said sum of $14.50, so paid by said plaintiff as freight charges on said piano, which sum plaintiff refused to accept.

"9. That said D. W. Prentice has paid into the hands of the clerk of this court the said sum of $14.50, as a payment in full of all claims and demands due from him to plaintiff, and the said sum is now subject to the order of plaintiff."

The court found the facts in accordance with the above stipulation, and as conclusions of law based on said findings, the court concluded:

"1. That the plaintiff, Louis Cook, is entitled to have and recover judgment against the said defendant A. J. Kane, for the sum of $140 as declared on in the first cause of suit in said complaint.

"2. And for the further sum of $12.50 as set forth and declared on in the second cause of suit in said complaint, and for the costs and disbursements of this suit, and that he is entitled to have execution and decree issue therefor.

"3. That plaintiff has a good and valid lien, as a hotel and inn keeper, upon the said upright piano mentioned in the complaint, and now in his possession, in the sum of —— dollars, being the amount of the board and lodging furnished by said plaintiff to the defendant A. J.

Kane, between the third day of July, 1885, and the eleventh day of September, 1885; that the same should be foreclosed on and against the said upright piano mentioned in the complaint, to satisfy said sum of ——— dollars; that he is entitled to judgment and decree of this court directing the sale of said piano for the payment and satisfaction of said sum of ——— dollars, and the costs and disbursements herein, and the receiver herein, in accordance with the law and practice of this court, and as property is sold on execution, sell said piano, and out of the proceeds of said sale, after paying the costs and expenses of the same, pay to plaintiff the amount of said lien, and if any overplus remain, the same to be paid into the registry of this court, subject to the order of the intervenor, D. W. Prentice.

" 4. That a judgment be docketed herein for the sum of ——— dollars against the said defendant, A. J. Kane."

From which decree the appeal is taken.

The question to be determined is whether the decree is sustained by the facts alleged and stipulated. The respondent's counsel claimed in the outset that the appellant had no standing in court, that there was no party to a suit in this state known as an intervenor. There is no such party known to our Code. We have only two parties to actions, suits, and proceedings, except in garnishee proceedings, and they are known as plaintiff and defendant. Where property has been attached in the hands of a third person, and the latter refuses to furnish a certificate concerning it, or his certificate furnished it is unsatisfactory, and he is required to appear and be examined on oath concerning the same, such person, in the proceedings thereon, is known as the garnishee. (Civil Code, sec. 161.) Nor do I know of any case where a person not made a party to an action, suit, or proceeding has the right to become a party plaintiff or defendant,

upon his or her own motion, except that in actions for the recovery of the possession of personal property, and an immediate delivery is claimed, another person than the defendant may claim the property. (Civil Code, sec. 140.) But there is a power in the court in all cases to cause other parties than those before it to be brought in when a complete determination cannot be had without their presence. (Civil Code, sec. 40.) Under the latter provision, I think it was proper in this case for the court to require the appellant to be made a party defendant, and that, in substance, was all that was done.

The appellant claimed ownership of the piano which the respondent was attempting to subject to the payment of his debt, and "a complete determination of the controversy" could not be had without the presence of the appellant. Upon the main question in the case, there is some doubt in view of the authorities upon the subject. Though upon a common-sense view there would not seem to be any. ( That the man Kane could pledge the appellant's piano for his own hotel bill, or in any way subject it to the payment thereof, would shock all sense of property right.) The respondent's counsel, however, have cited numerous cases where such a lien has attached to the property of a third person, and I have no doubt but that such lien will in many cases attach to the property taken by the guest to the inn, at which he obtains accommodations, though he be not the owner of it. ( But in all such cases, it seems to me the property must derive some special benefit, or else the owner must have intrusted it to a party under circumstances from which he could reasonably have concluded that the party would become the guest of an inn, and take the property with him there as his own; and I do not think the rule should extend further than this.) In the case under consideration, it does not appear that the appellant ever knew

that Kane was stopping at a hotel. He sent the piano to him at Baker City, to sell upon commission. ⟨ It does not appear that the respondent furnished the entertainment upon the credit of the piano, or upon the supposition that it belonged to Kane.⟩ The latter might, and so far as I can see would, have continued a guest at the hotel the same whether the piano had been sent or not. It is not a case, as I view it, where the owner of the property has clothed another with the *indicia* of ownership, and a third person been deceived thereby into purchasing it, or giving credit upon the faith of such indication. It was purely a business transaction. The appellant was attempting to make sale of his property, and sent it to Kane for that purpose. The latter had no authority in the premises, except to exercise the special power conferred, and it does not appear but that the respondent had full knowledge of the facts, as the appellant alleged he did in his answer. I am inclined to believe that the burden of proof was upon the respondent to establish that he supposed the piano to belong to Kane, and that he entertained him upon the faith that such was the fact, before he could claim a lien upon it for the hotel bill. The property of one man should not be taken for the debt of another against the former's consent, unless he has done some act or neglected some duty creating the liability. ⟨A party cannot be deprived of his ownership to property to satisfy the claim of another, unless he has in some form obligated himself to submit to it.⟩ He must have agreed to it in terms, or have done some act directly or remotely authorizing it. I do not think that the pleadings and agreed facts in this case establish that the respondent had any lien upon the piano for the hotel bill against Kane, or for anything beyond the sum advanced by the respondent for the freight and transportation of it, unless it be for its stor-

age; but the instrument has doubtless been used suffi-
ciently to offset any sum for storage, and the appellant
duly tendered the amount advanced as freight and trans-
portation.

I think the decree should be reversed as to the appel-
lant.