MEACHAM *v.* GALLOWAY.

(*Jackson.* May 2, 1899.)

1. HOTELS. *Proprietor's liability for boarder's goods.*

The proprietor of a hotel is not liable for the loss, by theft or otherwise, of the baggage and goods of a boarder, unless it is shown that the loss resulted from the wrongful or negligent act of himself or servants.

Case cited and approved: Pullman Palace Car Co. *v.* Gavin, 93 Tenn., 53.

2. SAME. *Boarder not guest.*

A person is a boarder, not a guest, who, for the purpose of entertaining a visitor, removes, with his family, from his home to a hotel in the same city, and takes rooms in the quarters allotted to regular boarders, for himself, family, and visitors for two or three weeks, at a special rate, less than that charged transient customers.

Case cited and approved: Manning *v.* Wells, 9 Hum., 746.

---

FROM SHELBY.

---

Appeal from the Chancery Court of Shelby County. LEE THORNTON, Ch.

PIERSON & EWING for Meacham.

PERCY & WATKINS for Galloway.

McALISTER, J. This bill was filed in the Chancery Court of Shelby County against the defendant

partnership, carrying on and operating a public inn in the city of Memphis known as the Peabody Hotel, to hold it liable for the value of a sealskin coat and sealskin cape and a valise, alleged to have been stolen from complainants' room while guests at said hotel. The Chancellor, upon final hearing, dismissed the bill. Complainants appealed and have assigned errors.

The first assignment is, the Court erred in holding that the relation of innkeeper and guest did not exist between complainants and defendants.

*Second.*—The Court erred in holding that, as boarders, the complainants were not entitled to recover.

The facts may be briefly stated. The complainant and his wife, in December, 1897, were boarding in the suburbs of Memphis, and, desiring to entertain a young lady visitor, engaged three rooms at the Peabody Hotel. At the time Mr. and Mrs. Meacham moved to the hotel, he was told the rate would be $2 per day if they stayed one week. Mr. Meacham stated that his family might stay as long as two or three weeks. As a matter of fact the family stayed less than two weeks. There is proof tending to show that complainant and his wife were assigned rooms on the fourth floor, among the regular boarders and families of the hotel, and this was done conformably to the request of complainant, and under an agreement to that effect made by him with the hotel clerk. The proof tends to show that the rate given, $2 per day for each person, was a

special rate given to all persons who remained longer than a week. Transient guests receiving the same accommodations would have paid higher rates. The proof shows that complainant, his family, and guest occupied three rooms, numbered respectively 139, 140, and 141. Complainant and his wife occupied room 141, while their son occupied room 140, the two rooms being connected by a door. It appears that after complainants had been staying at the hotel about a week, there was stolen from room 141, occupied by complainant and his wife, a sealskin coat valued at $300, a sealskin cape valued at $250, a boy's watch and chain valued at $12, and a gentleman's valise valued at $9.

The larceny was committed after 2 and before 4 o'clock P.M., on December 1, 1897. Mrs. Meacham testified that she had been wearing the sealskin coat during the morning, returned to the hotel about 12:30 o'clock, removed it, and hung it up in the wardrobe where the cape was hanging. She then locked the .door, put the key in her purse, and went down to the parlor to see a lady acquaintance; that in about twenty minutes she returned to her room, prepared for lunch, again locked the door, and did not return to her room until 3:30, when she discovered the larceny. Mrs. Meacham testified that the door was locked and her key to the room was in her purse during the time the larceny was committed; that when she returned to her room and made the discovery the door was still locked.

18 P—27

There is testimony tending to show that room 140 adjoining 141, with a door connecting, was not locked during the time covered by the larceny. The proof shows that, in addition to the key kept by Mrs. Meacham, there was a key to that room in the hands of the chambermaid, one in the hands of the fireman, and another kept at the office, which might be used by a bellboy, under the direction of the clerk, for the delivery of parcels, etc., into the room. Only one of these keys is accounted for on the day of the larceny—that held by the chambermaid, who testified that the key was in her possession, and that she did not enter the room. She testified that room No. 140, the adjoining room occupied by the boy, was not locked about 9:30 o'clock that morning, but that she did not return to it again until after the larceny.

Mrs. Meacham testified that since the larceny the manner of the chambermaid had undergone a marked change; that, while prior to the larceny she was a very attentive servant, afterwards she seemed quite frightened whenever she met Mrs. Meacham or her family.

Mrs. Meacham was asked by her counsel what she thought of the possibility of the garments having been placed in the valise and carried off in that way, to which she replied: "That is my idea; that they did that and walked through. No one could have suspected that it was not the gentleman's who took the valise, if a man had walked through the office with it, and if a man had, in fact, taken it."

It should have been stated that, while room 141 was locked, the wardrobe in that room, where the garments hung, was not locked. The door to the room 141 was not broken open, but the door between 140 and 141 was open when the larceny was discovered. The proof fails to show whether the outside, or hall, door to 140 was locked at the time the larceny was committed. The fact that Mrs. Meacham fails to testify on this point makes it inferable that the hall door to 140 was not locked.

It was conceded on the trial that the watch and chain should have been deposited in the safe, in compliance with notices to that effect posted in the room, and that no recovery could be had for the loss of the watch and chain.

The Chancellor held that complainant and his wife were boarders at the hotel, and that, as the record did not disclose any culpable negligence, the defendants were not liable for the value of the articles. In support of the decree of the Chancellor, it was argued that complainant was not a guest, for he was neither a traveler, wayfarer, or transient comer. It is insisted: (1) He was a neighbor, (2) he came at a fixed rate, (3) he came for a definite time, and specified that he should be located with the families, the regular boarders, and not with the transients. It is argued that as to him the hotel was not an inn, but a boarding house; that he received a lower rate, and

more limited liability was thereby incurred by the company.

An inn is defined as a house for the lodging and entertainment of travelers. *The People* v. *Jones*, 54 Barb., 311; *Lewis* v. *Hitchcock*, 10 Fed. Rep., 4. "A house where a traveler is furnished with everything he has occasion for while on the way." *Thompson* v. *Lacy*, 3 Barn. & Ald., 286. "Inns are houses for the entertainment of travelers—wayfarers, as they are called." *Caylis case*, 8 Co., 32; *Willard* v. *Reinhardt*, 2 E. D. Smith (N. Y.), 148; 11 Am. & Eng. Enc., Inns, 7; Bacon's Ab., Inns and Innkeepers; 3 Story on Bailments, Sec. 475.

So it has been held that common inns are instituted for passengers and wayfaring men, therefore, if a neighbor, who is no traveler, lodges there, and his goods be stolen, he shall not have an action. *Carter* v. *Hobbs*, 12 Mich., 52; 83 Am. Dec., 762. The prominent idea of the term guest is that he must be a traveler, wayfarer, or transient comer to an inn for lodging or entertainment. 11 Am. & Eng. Enc. L., 13. "Every one who is received into an inn and has entertainment there, for which the innkeeper has remuneration or reward for his service, is a guest. The relation of host and guest exists. This general definition, however, only includes those who are, in a legal sense, travelers or wayfarers, and boarders or persons who reside in the same place are not embraced by it. It is only travelers or wayfarers that innkeepers are bound to

accept as guests, and it is to them alone that he is under extraordinary responsibility for the safe-keeping of beast and goods.'' *Russel* v. *Fagan*, 8 Atl. (Del.), 258; *Curtis* v. *Murphy*, 63 Wis., 4.

''The basis of this restriction is the peculiar liability of innkeepers to those who, as strangers and sojourners, are compelled to put up in an inn without knowing the character of the house. The liability of innkeepers is strict, and justly so, but it is a liability limited to their relation to travelers or wayfaring men. The law of civilized countries benignantly protects men away from home and from those resources with which the denizen or citizen can guard himself from wrong and protect his property from loss or injury.'' *Hornor* v. *Harvey*, 5. Pac., 329.

''When a traveler comes to an inn and is accepted, he instantly becomes a guest. The innkeeper, when he accepts him and his goods, becomes his insurer, and the innkeeper must answer in damages for the loss or injury of all goods, money, and baggage of his guest brought within his inn and delivered into his charge and custody, according to the usage of travelers and innkeepers; but he must be a guest, and before he can be a guest he must be a traveler. When he ceases to be a traveler or a transient or a wayfaring man, and takes up a permanent abode, even in an inn, he ceases to be an object of the law's especial solicitude, and he is no longer a guest, but a boarder; no longer a traveler, but a citizen.'' *Ib.*

Again, in *Russel* v. *Fagan*, 8 Atl. Rep. (Del.), 258, Chief Justice Comegys said: "It is said that inns exist for the benefit of the traveling community. In fact, they are almost as much a necessity to travelers as the public means of locomotion are. In them wayfaring people of every kind, if they can afford the expense which the host charges for that service, can be accommodated with diet and lodging; in other words, can be entertained in their journeyings. The necessities of such people oblige them to solicit entertainment at the public or common inn, both for themselves and their beasts, where they travel with such, otherwise they would be without shelter and food. Because of this necessity, and that the host or entertainer is generally unknown to a party resorting to his house or inn, and that such party is compelled to trust himself and his property to his keeping, and that he is charged by the innkeeper for entertainment of himself and his beasts and the custody of his property, the law holds the innkeeper to a strict liability, not from any contract between the parties, but from the duty growing out of his public employment."

"It is said that there are two classes of persons who are entertained by innkeepers for reward, guests and boarders. The distinction between a guest and boarder, which it is difficult to draw, and which is variously stated, is based mainly upon the fact that boarders contract for a definite stay at specific prices."

Meacham v. Galloway.

In *Lawrence* v. *Howard*, 1 Utah, 142, the Court said: "In this country, hotel keepers act in a double capacity, being both innkeepers and boarding house keepers. As innkeepers, they entertain travelers and transient persons, those who come without bargain as to time or price and go away at pleasure, paying for only actual entertainment received. As boarding house keepers, they entertain resident and regular boarders for definite lengths of time, and at specific prices previously agreed upon."

In *Shortcraft* v. *Bailey*, 25 Iowa, 553, the distinction between a guest and boarder seems to be this: "The guest comes without any bargain for time, and remains without one, and may go whenever he pleases, paying only for the actual entertainment he receives, and it is not enough to make one a boarder and not a guest that he stayed for a long time in the inn in this way."

The case of *Manning* v. *Wells*, 9 Hum., 746, is to the same effect. In that case it appeared plaintiff was boarding at the house of defendant, who kept a public inn in the city of Memphis, at $12.50 per month, and lodged in a room that had no lock on the door, and that during the night, while he slept, his coat, worth $12.50, was stolen. The trial Judge charged the jury that defendant was liable for the coat if lost or stolen from his house, unless it happened by the act of God or the public enemy, but if the plaintiff had exclusive use and possession of the room, then the defendant would

not be liable. The jury found for the plaintiff the value of the coat, and the defendant appealed to this Court. Said Judge Green, viz.: "The doctrine stated by his Honor is certainly the true one as applicable to the goods of a guest in an inn, but a guest is a traveler or wayfarer who comes to an inn and is accepted. Story on Bail., Sec. 477. A neighbor or friend who comes to an inn, on the invitation of the innkeeper, is not deemed a guest. Bac. Abr., Inn & Innkeeper; 5 Com. Dig., Action on Cases for Negligence, B. 2. Nor is a person a guest, in the sense of the law, who comes upon a special contract to board and sojourn at an inn; he is deemed a boarder, and if he is robbed, the host is not answerable for it. 5 Bac. Abr., Inn & Innkeeper, 5.

"These principles are settled by the authorities, and founded in sound reason. A passenger or wayfarer may be an entire stranger. He must put up and lodge at the inn to which his day's journey may bring him. It is, therefore, important that he should be protected by the most stringent rules of law, enforcing the liability of the innkeeper. In such case, therefore, the law makes the innkeeper the insurer of the goods of his guest, except as to losses occasioned by the act of God or public enemies. But as a boarder does not need such protection, the law does not afford it. It is sufficient to give him a remedy when he shall prove the innkeeper has been guilty of culpable negligence."

Meacham *v.* Galloway.

See 2d Ed. Am. & Eng. Enc. L., Vol. 4, title, Board, 592.

These authorities we think conclusive of the question presented by the first assignment of error, for it must be conceded, upon the undisputed facts in the record, that plaintiff and wife were mere boarders in defendant's hotel, and while occupying this relation the proprietors were not insurers of their property, but are only liable for culpable negligence. There being no proof of negligence, or that the articles were purloined by any employe of the defendant, the company is not liable. *Pullman Palace Car Co.* v. *Gavin*, 9 Pickle, 53.

Affirmed.