# SUPREME COURT OF TENNESSEE

FOR THE

### WESTERN DIVISION

---

### JACKSON, APRIL TERM, 1913.

---

### (*Continued from Vol.* 127.)

---

### NANCE *v.* PIANO CO.*

### (*Jackson.* April Term, 1913.)

1. INNKEEPERS. Lien.

At common law innkeepers had a lien upon baggage brought upon the premises by guests, whether it belonged to the guests or to third persons; but such lien did not exist in favor of boarding house keepers. (*Post, p.* 5.)

Cases cited and approved: Hunter v. Sevier, 15 Tenn., 130; Cook v. Kane, 13 Ore., 482; Black v. Brennan, 5 Dana (Ky.), 310; Singer Mfg. Co. v. Miller, 52 Minn., 516; Meacham v. Galloway, 102 Tenn., 415.

---

*For some decisions on the question of an innkeeper's lien, see note in 21 L. R. A., 229. And upon the question of the lien of an innkeeper on property of third person in possession of guest, see note in 24 L. R. A. (N. S.), 958.

**2. LIVERY STABLE KEEPERS.  Lien.**

At common law a livery stable keeper did not have a lien such as that given to innkeepers.  (*Post*, p. 6.)

Code cited and construed:   Sec. 3556 (S.).

Cases cited and approved:   McGee v. Edwards, 87 Tenn., 506; Caldwell v. Tutt, 78 Tenn., 258.

**3. INNKEEPERS.  Eminent domain.  Liens by boarding house keepers.  Validity of statute.**

Shannon's Code, sec. 3590, giving the keepers of boarding and lodging houses a lien on all baggage and other goods, brought into such house by any guest, to secure payment of sums due for board or lodging, is valid, and does not violate Const. Tenn., art. 1, sec. 21, prohibiting property from being taken without just compensation.  (*Post*, pp. 6, 7.)

Cases cited and approved:   Waters v. Gerard, 189 N. Y., 302; Arendale v. Morgan & Co., 37 Tenn., 703; Guano Co. v. Hunt, 100 Tenn., 89.

**4. CONSTITUTIONAL LAW.  Innkeepers.  Due process of law.**

The statute does not violate Const., art. 1, sec. 8, prohibiting one from being deprived of property, except by the law of the land.  (*Post*, pp. 6, 7.)

**5. SALES.  Conditional sales.**

A conditional vendor only has a lien as security for the purchase money by the retention of title, and does not own the property absolutely.  (*Post*, p. 7.)

Constitution cited and construed:   Art. 1, sec. 8; art. 11, sec. 8.

Cases cited and approved:   Southern Ice & Coal Co. v. Alley, 154 S. W., 536; McGee v. Edwards, 87 Tenn., 506; Motlow v. State, 125 Tenn., 589.

**6. CONSTITUTIONAL LAW.  "Law of the land."  Abolishing common law.**

The legislature is not prohibited from changing or abolishing the common law in force at the adoption of the State constitution, in the absence of restriction in the State or Federal Constitution; the phrase "law of the land" as used in the State Constitution, merely referring to the common and statute law

Nance v. Piano Co.

then existing, but not prohibiting the change of the common law.  (*Post, pp.* 8,9.)

Case cited and approved:   Prescott v. Duncan, 148 S. W., 299.

Case cited and distinguished:   Harbison v. Knoxville Iron Co., 103 Tenn., 421.

### FROM SHELBY.

Appeal from Circuit Court, Shelby County.—H. W. LAUGHLIN, Judge.

D. B. LOOMIS, for appellant.

BROWN & ANDERSON, for appellee.

Mr. Justice LANSDEN delivered the opinion of the Court.

This is an action of replevin, brought by the piano company, as plaintiff below, to recover from Mrs. Nance a certain piano, which it claimed as the conditional vendor of the piano to one Ives.

The piano company sold a piano to Ives in February, 1906, at the price of $385, $10 of which was paid in cash and $43 was paid by the piano company taking another piano in exchange.  The balance of $332 and interest was to be paid at the rate of $6 per month, and title to the piano was to remain in the piano company until the whole price was fully paid.  The agreement that the title should remain in the piano company was in writing.

Ives died, and on May 18, 1911, his widow and minor children went to the boarding house of Mrs. Nance for

the purpose of boarding and lodging with her.    Mrs. Ives took the piano to the boarding house at the time she and her family began boarding with Mrs. Nance. They remained with Mrs. Nance until June 28, 1911, when they left, owing her $78 for board.    Mrs. Ives did not take the piano with her when she left the boarding house. Mrs. Nance had no notice or knowledge of the rights of the piano company.    Ives paid all of the purchase price of the piano, except $36.71.

Upon these facts, the court of civil appeals held that the lien of Mrs. Nance was superior to that of the piano company.    The piano company has filed its petition for *certiorari* to the decree of the court of civil appeals.    The court of civil appeals was of opinion that the case was controlled by section 3590 of Shannon's Code as follows:

"Sec. 3590.    Keepers of hotels, boarding houses and lodging houses, whether licensed or not, shall have a lien on all furniture, baggage or wearing apparel, or other goods and chattels brought into any such hotel, boarding house or lodging house by any guest or patron of the same, to secure the payment by such guests of all sums due for board or lodging."

The only error assigned in this court is that the foregoing section of the Code is unconstitutional and void, in so far as it attempts to confer a lien in favor of keepers of boarding houses and lodging houses on the personal property brought into them by any guest or patron to secure the payment of sums due for board or lodging.    It is not denied that innkeepers would

have such a lien at the common law, but it is said that the legislature has no power to extend the common law lien in favor of innkeepers to personal property in the possession of guests and patrons of boarding houses.

The insistence is that such legislation violates sections 8 and 21 of article 1 of the constitution of this State.

If we understand the contention of counsel upon this point, it is that inasmuch as the extraordinary lien given to innkeepers by the common law, which attached to baggage in the possession of or brought upon their premises by guests, whether it belonged to the guests or to a third party (*Hunter* v. *Sevier,* 7 Yerg., 130; *Cook* v. *Kane,* 13 Or., 482, 11 Pac., 226, 57 Am. Rep., 28; *Black* v. *Brennan,* 5 Dana [Ky.], 310); and such a lien did not exist at common law in favor of boarding house keepers (*Singer Mfg. Co.* v. *Miller,* 52 Minn., 516, 55 N. W., 56, 21 L. R. A., 229, 38 Am. St. Rep., 568), and inasmuch as the common law distinction between innkeepers and boarding house keepers is recognized in this State (*Meacham* v. *Galloway,* 102 Tenn., 415, 52 S. W., 859, 46 L. R. A., 319, 73 Am. St. Rep., 886), therefore it is not competent for the legislature to abolish the distinction taken at the common law and confer the extraordinary lien enjoyed by the innkeeper upon the boarding house keeper.

We will observe, in passing, that this court has in effect decided a similar statute valid, but without discussing its constitutionality. By section 3556 of Shan-

non's Code, livery stable keepers are given the same lien as innkeepers had at common law. The livery stable keeper did not have such a lien at common law. *McGee v. Edwards,* 87 Tenn., 506, 11 S. W., 316, 3 L. R. A., 654. Still this lien was recognized in the case last cited, though postponed to the prior lien of a registered mortgage, and it was expressly enforced in *Caldwell v. Tutt,* 10 Lea, 258, 43 Am. Rep., 307, and held to have priority over the levy lien of an execution creditor.

We are of opinion that it is entirely competent for the legislature to confer the lien in question upon boarding house keepers. *Waters v. Gerard,* 189 N. Y., 302, 82 N. E., 143, 24 L. R. A. (N. S.), 958, 121 Am. St. Rep., 886, 12 Ann. Cas., 397. Hotels and boarding houses are public necessities, and the legislature may give them such reasonable protection as, in its judgment, a sound public policy may demand. If the legislature believed that keepers of hotels and boarding houses are exposed to fraud and deceit by a fraudulent show of baggage in possession of their guests and patrons, and apparently belonging to them, it is competent for it to provide a lien in their favor for the accommodations received from them upon the strength of credit extended because of property brought upon the premises of the keeper. This is a reasonable exercise of the police power, for the prevention of fraud and deceit, and for the protection of those who, for the convenience of the public, are constantly dealing with transients, and with others, not necessarily transients, but who are often unknown to the boarding house

keeper. It is not a taking of the property of one and bestowing it upon another in any constitutional sense, because it is only just and reasonable for the legislature to require owners of property, who clothe others with its possession and apparent title, to give due and proper notice of the qualified title and possession of those to whom it is intrusted. The justness of this principle is recognized in almost every branch of the law. It finds its illustrations, not only in numerous statutes, both early and late, but in the common law, and in the great body of equity jurisprudence administered by our courts of chancery from the earliest times. The innocent purchaser of bills or notes may acquire a good title as against the true owner, although his vendor procured the instrument by fraud. *Arendale* v. *Morgan & Co.*, 5 Sneed, 703; *Guano Co.* v. *Hunt*, 100 Tenn., 89, 42 S. W., 482. An innocent purchaser of real estate, taking either the real or apparent legal title without notice of the equities of the true owner, will take the property discharged of such secret claim, however meritorious it may be. So it is neither unusual nor unlawful for the statute to require the legal rights of the true owner to be postponed to superior equities arising subsequently in point of time, and through the negligence of the owner.

The piano company, as conditional vendor, does not own the piano absolutely, but acquired a lien merely as security for the purchase money by the retention of the title. *Southern Ice & Coal Co.* v. *Alley*, 154 S. W., 536, 127 Tenn., 173.

The lien conferred by the statute does not exist in favor of the innkeeper and the boarding house keeper, if they have notice of the nature and extent of the title of the patron or guest at the time the property was brought upon the premises, or before credit was extended. *McGee* v. *Edwards,* supra; Jones on Liens, sec. 502. In *Motlow* v. *State,* 125 Tenn., 589, 145 S. W., 188, this court used the following language with respect to the police power:

"The police power is a necessary one, inhering in every sovereignty, for the preservation of the public safety, the public health, and the public morals. It is of vast and undefined extent, expanding and enlarging in the multiplicity of its activities as exigencies demanding its service arise in the development of our complex civilization. It is a function of government solely within the domain of the legislature to declare when this power shall be brought into operation, for the protection or advancement of the public welfare. It is said that the courts have the right to determine whether such law is reasonable. By this expression, however, it is not meant that they have power to pass upon the act with a view to determining whether it was dictated by a wise or a foolish policy, or whether it will ultimately redound to the public good, or whether it is contrary to natural justice and equity. These are considerations solely for the legislature. In determining whether such act is reasonable, the courts decide merely whether it has any real tendency to carry into effect the purposes designed—that is, the protec-

tion of the public safety, the public health, or the pub-
lic morals—and whether that is really the end had in
view, and whether the interests of the public generally,
as distinguished from those of a particular class, re-
quire such interference, and whether the act in ques-
tion violates any provision of the State or federal con-
stitution.   The constitutional provisions always cited,
but not necessarily the only ones, in the courts of this
State, with a view to asserting the courts' control over
the exercise of the police power by the legislature, are
article 1, section 8, and article 11, section 8, of our
State constitution, which, as we have already said, are
in effect the same, and which provide in substance that
no one shall be deprived of his life, liberty, or property,
but by due process of law or the law of the land, and
no one shall be deprived of the equal protection of the
laws.   These provisions forbid that any mere indi-
vidual shall be singled out for legislative action, but
do not deny the right to the lawmaking power to make
proper classifications for purposes of legislation.  Such
classification, however, must rest upon some natural
or reasonable basis, having some substantial relation to
the public welfare, and the same provisions must ap-
proximately apply in the same way to all of the mem-
bers of the class.''

In that case it was held that it was competent for the
legislature to prohibit entirely the performance of an
act which is harmless within itself, if it could be seen
that the harmless act was being used as a means of
fraud in the promotion of an unlawful act.

The suggestion in briefs that the common law as it existed at the time of the adoption of our constitution was transfixed by that event into a rigid and inflexible system of laws, which could not be changed by the legislature, is one that is not entitled to serious consideration. The only relation which the system of laws in force at the time of the adoption of the constitution has to the construction of that instrument is to furnish a definition and proper interpretation of terms used in the constitution with reference to the system of laws. "The law of the land," as used in the constitution, did not embrace as a fixed and immovable system the common law in existence at the time. It had reference to the common and statute law then existing in this State. But this does not mean that it is not competent for the legislature to alter, change, or abolish the system of law in force at the time of the adoption of the constitution, and it may do so, unless it is prohibited from so doing by the constitution of this State or of the United States, either expressly or by fair and necessary implication. *Prescott* v. *Duncan,* 148 S. W., 229; *Harbison* v. *Knoxville Iron Co.,* 103 Tenn., 421, 53 S. W., 955, 56 L. R. A., 316, 76 Am. St. Rep., 682.

The case last cited is a well-considered one upon this phase of the case, and nothing that we can say can add to the exhaustive discussion of the principles and the copious citation of the authorities to be found there.

The judgment of the court of civil appeals is affirmed.