(28 Misc. Rep. 208.)

## BRIGGS v. TODD.

(Supreme Court, Appellate Term. June 28, 1899.)

1. INNKEEPERS—STATUTORY LIMITATION OF LIABILITY.
   Statutes limiting the liability of innkeepers for the loss of property of their guests are in derogation of the common law, and must be strictly construed.

2. SAME—SILVERWARE AND WATCH.
   Silver table forks, a silver soup ladle, and a gold watch are not jewels or ornaments, within the meaning of Laws 1897, c. 305, relieving an innkeeper from liability for loss of "money, jewels, or ornaments," where he furnishes a safe in the office of his hotel, posts notice thereof in the hotel, and the guest neglects to deposit such articles in the safe.

3. SAME.
   The fact that a state coat of arms is engraved on the watch, and a picture of the guest's mother is on the inside of the case, does not convert it into a jewel or an ornament; nor is it any the less a chronometer because it is laid aside in the guest's trunk for a brief space of time.

Appeal from municipal court, borough of Manhattan, Tenth district.

Action by Albert S. Briggs against Louis L. Todd to recover the value of certain property lost while plaintiff was a guest in defendant's hotel. The cause was submitted on an agreed statement of facts, and from a judgment in plaintiff's favor defendant appeals. Affirmed.

Argued before FREEDMAN, P. J., and MacLEAN and LEVENTRITT, JJ.

Jonas B. Weil, for appellant.
E. D. Fleetham, for respondent.

LEVENTRITT, J. This action was disposed of below on an agreed state of facts. The plaintiff and his wife, residents of the city of Richmond, Va., arrived in New York City on the 9th day of November, 1898, and became guests at the defendant's hotel. On the 12th day of November the plaintiff, having purchased a dozen silver table forks for $23, and a silver soup ladle for $12, took these articles to his room, and placed them in his trunk. At the same time he put in the trunk the gold watch which he ordinarily carried on his person. This watch, valued at $40, was an heirloom; was manufactured in London for his father, had the coat of arms of the state of Virginia on the outside, and his mother's picture in enamel on the inside of the case. That night the plaintiff and his wife left the hotel to pay a visit, and, before going out, locked the trunk, and also the door of the room. Returning a few hours later, the plaintiff discovered, on opening his trunk, that the watch, forks, and ladle had been stolen. Throughout the period of the plaintiff's sojourn at the hotel, there was posted in public and conspicuous places on the premises the notice required by statute, to the effect that a safe was provided by the defendant for the safe-keeping of any money, jewels, or ornaments belonging to the guests, and that the defendant would not be liable for the loss of any such property unless delivered and intrusted to him or his agents. At no time were the watch, forks, and soup ladle delivered into the actual custody of the defendant. On this state of facts the justice rendered judgment in the plaintiff's favor for the agreed value of all the articles. The defendant appeals, urging that he should not be held liable, because the plaintiff did not comply with the notice, and did not give the articles into his actual custody, for deposit in the office safe.

To a proper appreciation of the force and effect of the statutory provisions invoked by the defendant, it must be emphasized that they are in derogation of the common law, and must therefore be strictly construed. McCluskey v. Cromwell, 11 N. Y. 593; Fitzgerald v. Quann, 109 N. Y. 441, 17 N. E. 354. The courts of this state have undeviatingly adhered to the salutary rule of the common law, visiting upon an innkeeper the stringent liability of an insurer. While some jurisdictions have strained to relax what they deemed a too onerous obligation (Cutler v. Bonney, 30 Mich. 259; Merritt v. Claghorn, 23 Vt. 177), our judicial tribunals have recognized that, although many of the conditions which gave birth to the rule have changed or ceased to exist, new conditions have arisen, that have infused into it a fresh vitality. Wilkins v. Earle, 44 N. Y. 172. It is true that inns are no longer few or far apart, that open violence has been curbed, and that we now seldom hear of the solitary traveler, compelled to seek shelter in a lonely inn, murdered for his goods, or that his host, to whose protection he has been obliged to confide his person and his property, has, either alone or in collusion with his servants, betrayed his trust. We may concede that a higher standard of morality obtains to-day, or at least that there is its outward show. The hotel-keeper's calling is as honorable as any in our modern commercial order, and individual betrayals of trust are indeed rare. While the proprietors and managers of our modern inns are men of character

and integrity, whose skill, ingenuity, and business resources have made of travel and hotel life a convenience and a pleasure, where formerly it was a discomfort and a hardship, yet it must be remembered that the unprincipled compete with the honest,—that the vocation is open to all. In many other respects, however, the conditions are unchanged. Protection against fraud and depredation still underlie the public policy which will not permit an innkeeper to avoid his extraordinary responsibility, except by the act of God, the public enemy, or the negligence of his guest. Violence has given place only to stealth, the armed robber to the sneak thief. The very organization and development of the hostelries of the present afford opportunities to the dishonest, and correspondingly expose the guest to risks which prohibit any modification of the rule. In the mammoth hotel of to-day, with its numberless rooms, its army of servants, its incessant stream of arriving and departing transients, the property of the guest is at the mercy of many people. His own room is necessarily accessible to a number of the employés of the hotel, whose fraud or neglect may subject him to loss. He cannot prevent the injury, and, after he has suffered it, he is powerless to detect or prove guilt. The stranger disappears, and the servants protest ignorance and innocence. While at times it may seem harsh to cast the consequences on the innkeeper, yet, as between him and his guest, he should bear the burden. He has the selection of his servants; he should be answerable for their honesty, and for their vigilance in guarding against the dishonesty of others. He dictates his compensation, and he secures it by the lien on the goods of his guest. He enjoys special privileges, and he should grant special immunities. And, even were this not so, considerations of public policy, which, in the interest of commercial prosperity and social welfare, require that intercourse in and between cities and towns be full, free, and secure, preserve and reaffirm the wisdom of the ancient rule. And so our courts, instead of relaxing it (Hulett v. Swift, 33 N. Y. 571), have rather broadened its application (Adams v. Steamboat Co., 151 N. Y. 163, 45 N. E. 369).

Bearing in mind, now, the steadfast recognition accorded by our courts to the common-law doctrine, it will be apparent that the modification by legislative enactment must be strictly construed.

The first act to regulate the liability of hotelkeepers for the loss of property belonging to their guests was passed in 1855 (chapter 421 of the Laws of that year), providing that:

"Whenever the proprietor or proprietors of any hotel shall provide a safe in the office of such hotel, or other convenient place for the safe keeping of any money, jewels or ornaments belonging to the guests of such hotel, and shall notify the guests thereof, by posting a notice (stating the fact that such safe is provided, in which such money, jewels or ornaments may be deposited), in the room or rooms occupied by such guest, in a conspicuous manner, and if such guest shall neglect to deposit such money, jewels or ornaments in such safe, the proprietor or proprietors of such hotel shall not be liable for any loss of such money, jewels or ornaments, sustained by such guest, by theft or otherwise."

This was followed in 1883 by an amendment, which, re-enacting in practically identical language the provisions relating to money, jewels, and ornaments, limited liability for the loss of wearing apparel,

goods, or merchandise to $500. Laws 1883, c. 227. A further amendment in 1892, leaving the provisions as to money, jewels, and ornaments unchanged, substituted the word "property" for "wearing apparel, goods or merchandise" in the previous amendment. Laws 1892, c. 284. The final legislation on the subject is embodied in chapter 305 of the Laws of 1897, and, as that is the particular statute invoked by the defendant, we shall quote it in full:

"Whenever the proprietor or manager of any hotel, inn or steamboat shall provide a safe in the office of such hotel or steamboat, or other convenient place for the safe keeping of any money, jewels or ornaments belonging to the guests of or travelers, in such hotel, inn or steamboat, and shall notify the guests or travelers thereof by posting a notice stating the fact that such safe is provided, in which such money, jewels or ornaments may be deposited, in a public and conspicuous place and manner in the office and public rooms, and in the public parlors of such hotel or inn or saloon of such steamboat; and if such guest or traveler shall neglect to deliver such money, jewels or ornaments, to the person in charge of such office for deposit in such safe, the proprietor or manager of such hotel or steamboat shall not be liable for any loss of such money, jewels or ornaments sustained by such guest or traveler by theft or otherwise. But no hotel or steamboat proprietor, manager or lessee shall be obliged to receive property on deposit for safekeeping exceeding five hundred dollars in value; and if such guest or traveler shall deliver such money, jewels or ornaments to the person in charge of such office, for deposit in such safe, said proprietor, manager or lessee shall not be liable for any loss thereof, sustained by such guest or traveler by theft or otherwise in any sum exceeding the sum of two hundred and fifty dollars unless by special agreement in writing with such proprietor, manager or lessee."

Relying on this statute, the defendant contends that the lost chattels were "ornaments and jewels," within the spirit and meaning of the act, and that, the landlord having concededly provided a safe and posted the requisite notice, the plaintiff is barred from recovery by his failure to intrust his property for safe-keeping. It will be observed that no change has been made since the law of 1855 in the list of articles to which the exemption extends. Unless an article is money, a jewel, or an ornament, the guest need not offer it for deposit. Is a watch such an article, or are the lost pieces of silverware included within the exemption? We think not. So far as the soup ladle and silver forks are concerned, the mere naming of the articles implies a negative answer. Were our statute as broad as that of Maryland, where the excepted articles embrace "money, jewelry and plate" (Pub. Gen. Laws 1860, art. 70, §§ 5, 6), or that of Minnesota, enumerating "money, jewelry, or other valuables of gold, silver, or rare and precious stones" (Gen. St. 1894, §§ 7997, 7998), or that of Wisconsin, designating "money, jewelry and articles of gold or silver manufacture" (Rev. St. Wis. c. 82, §§ 1725, 1726), or that of Missouri, naming "money, jewelry and articles of gold and silver manufacture and the like" (Rev. St. Mo. §§ 5511, 5512; Laws 1872, c. 55, § 1), or perhaps even that of Pennsylvania, exempting "money, jewelry and other valuables" (Laws Pa. 1855, p. 479), then the defendant might not be answerable for the silverware. It is clearly otherwise under our statute.

While we are aware that some courts, independent of statute, have refused to hold an innkeeper liable for lost silverware (Pettigrew v. Barnum, 11 Md. 434; Vance v. Throckmorton, 5 Bush, 327), on the

ground that the responsibility extends only to what may properly be termed the "baggage" of the guest, our courts have not restricted the liability, as in the case of a common carrier, to personal baggage, but have apparently extended it to all the property which, belonging to the guest, is received by the innkeeper as such. Van Wyck v. Howard, 12 How. Prac. 151; Taylor v. Monnot, 4 Duer, 116; Wilkins v. Earle, 44 N. Y. 172. See, also, Kent v. Shuckard, 2 Barn. & Adol. 803; Woolen Co. v. Proctor, 7 Cush. 417; Smith v. Wilson, 36 Minn. 364, 31 N. W. 176; Pinkerton v. Woodward, 33 Cal. 557. A text writer says:

"It would therefore seem to be the well-settled rule in this state that an innkeeper's liability for baggage is even greater, his trust even more sacred, his duty to use even more diligence, than a common carrier of goods for hire." Wandell, Inns.

We cannot read into the words "money, jewels or ornaments" meanings which they do not ordinarily bear. These words have a plain and accepted usage. The office of interpretation is not to superimpose a strained or doubtful sense upon one already clearly expressed. It may well be that the legislature intended to grant to hotelkeepers a fuller meed of protection than it succeeded in expressing in its formal enactment, although in the statutes under consideration the unchanged repetition of the words "money, jewels or ornaments" in all the acts would seem to negative such an inference. At all events, it is not the function of courts to correct supposed defects, errors, or omissions. That would be an unwarranted assumption of legislative power. The legislature, guided by judicial construction or by the practical operation of its laws, must be left to remedy the mischief by amendment or repeal.

So much for the silverware. The same rules of construction and interpretation apply to the watch. But here we have, in addition, precedent to control our decision. In Ramaley v. Leland, 43 N. Y. 539, which was an action involving the effect of the act of 1855, the court, holding the statute to be in derogation of the common law, and therefore strictly limited to the particular species of property named, say:

"A watch is neither a jewel nor an ornament, as these words are used and understood either in common parlance or by the lexicographers. It is not used or carried as a jewel or ornament, but as a timepiece or chronometer,—an article of ordinary wear by most travelers of every class, and of daily and hourly use by all. It is as useful and necessary to the guest in his room as out of it, in the night as the day time. It is carried for use and convenience, and not for ornament. But it is enough that it is neither a jewel or ornament, in any sense in which these words have ever been used."

The innkeeper was therefore held liable for the value of the watch, notwithstanding compliance on his part with the provisions of the statute. To similar effect are Gile v. Libby, 36 Barb. 70; Bernstein v. Sweeny, 33 N. Y. Super. Ct. 271; Becker v. Warner, 90 Hun, 187, 35 N. Y. Supp. 739.

The case of Hyatt v. Taylor, 42 N. Y. 258, well illustrates the principle of strict construction which the courts have applied to the statute in question. While disapproving Gile v. Libby, supra, in so far as it permitted a recovery for the loss of a small amount of money

and of a gold pen and pencil case, it left unimpaired the force of that decision in so far as it permitted a recovery for the watch.

There is an unguarded expression in one case in the court of appeals (Rosenplaenter v. Roessle, 54 N. Y. 262) that has cast a shade of doubt upon the otherwise uniformly recognized rule. Earl, C., therein writes:

"The law is thus settled in this state that if a guest, on retiring to bed at night, removes a watch or jewelry from his person, or leaves money in his pocket, and neglects to deposit the same in a safe provided for that purpose, he cannot hold the landlord liable for the loss of the same, provided the notice required by the statute has been posted in his room. However inconvenient or troublesome it may be to make the deposit, it must be made, or else the landlord has the protection of the statute."

Barring the use of the word "watch," that language accurately announces the approved law of the other cases. It is to be noted that there was no watch involved in the litigation, and that the case of Ramaley v. Leland, supra, in which the question was directly passed upon, was apparently overlooked. We therefore follow Becker v. Warner, supra, in which, referring to the learned commissioner's language, it is said that, "in so far as the foregoing statement includes a watch, it was evidently an inadvertence on the part of the learned judge, or at least obiter."

An examination of the authorities of other states will show that the responsibility of the landlord for a lost watch is dependent strictly on the terms of the particular statute. Thus, under the Wisconsin law, supra, it was held that no liability attached (Stewart v. Parsons, 24 Wis. 241), while under the narrower terminology of the Maryland act, supra, the contrary rule prevailed. Maltby v. Chapman, 25 Md. 310.

In the case at bar, the mere fact that the coat of arms of Virginia was engraved on the watch, and that the picture of the plaintiff's mother was on the inside of the case, did not convert the timepiece into a jewel or an ornament; nor was it any the less a chronometer because it had been laid aside for a brief space of time. Under our statute, the landlord is liable for the lost articles, and the judgment must be affirmed.

Judgment affirmed, with costs to the respondent.

FREEDMAN, P. J., concurs. MacLEAN, J., concurs in result.