HORACE WATERS AND COMPANY, Appellant, v. CAROLINE B. GERARD, Respondent.

1. INNKEEPERS — LIEN UPON GOODS OF THIRD PERSON IN POSSESSION OF A GUEST HAS ALWAYS EXISTED UNDER COMMON LAW AND HAS NOT BEEN EXTENDED BY LIEN LAW. The common law of England prior to 1775 gave an innkeeper a lien upon goods owned by a third person in the rightful possession of a guest for the value of his entertainment. The innkeeper was compelled to receive and act as an insurer for, not only the goods of a guest, but also the goods of any person the guest might have in his possession; hence the lien was commensurate with his extraordinary liability. This rule was adopted by and continued in force by the several Constitutions of the state of New York. It is not a modern rule, but has existed for such a period of time that the memory of man runneth not to the contrary. The Lien Law (L. 1897, ch. 418, § 71), therefore, is simply declaratory of the common law and does not enlarge or extend an innkeeper's lien so far as it relates to the property of a third person in the lawful possession of a guest. The authorities collated and exhaustively discussed.

2. LIEN LAW, CONSTITUTIONAL. Apart from the question, however, whether such lien was given by the common law, the act in question so far as it gives an innkeeper a lien upon goods owned by a third person in the rightful possession of a guest, is not violative of any constitutional right; public policy requires that an innkeeper be held to an extraordinary and severe responsibility; his protection, therefore, should equal his liability; this the legislature had the constitutional right to give him although it involves the goods of a third person, since all property is held subject to such general regulations as are necessary for the common good and the public welfare.

3. LIEN OF HOTEL KEEPER EXTENDS TO PROPERTY DELIVERED TO GUEST UNDER CONDITIONAL CONTRACT OF SALE. A hotel keeper has a lien for the unpaid hotel bill of a guest upon a piano in the possession of

the guest under a conditional contract of sale providing that the title thereto should remain in the vender until the purchase price thereof had been fully paid; and this lien is superior to the right of the vender to retake possession of the piano, upon a breach by the guest of the conditions of the contract of sale.

*Waters & Co.* v. *Gerard*, 106 App. Div. 431, affirmed.

(Argued May 2, 1907; decided October 8, 1907.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered July 24, 1905, in favor of defendant upon the submission of a controversy under section 1279 of the Code of Civil Procedure.

The nature of the controversy and the facts, so far as material, are stated in the opinion.

*Frederick H. Sanborn, Noel B. Sanborn* and *George P. Sanborn* for appellant. The clause in Mrs. Carlisle's lease that respondent should have a lien on all the effects and property brought into said hotel for any bills she might incur can have no bearing on this case. Mrs. Carlisle did not own this piano, and could make no transfer of it, nor give away rights in it, nor lien upon it that could affect the plaintiff. (6 Am. & Eng. Ency. of Law [2d ed.], 486, 487; *Ballard* v. *Burgett*, 40 N. Y. 314; *Austin* v. *Dye*, 46 N. Y. 500; *Soltau* v. *Gerdau*, 119 N. Y. 380; *Saltus* v. *Everett*, 20 Wend. 268; *Barnett* v. *Walker*, 39 Misc. Rep. 323; 16 Am. & Eng. Ency. of Law [2d ed.], 548, note; *Hancock* v. *Rand*, 90 N. Y. 1; *Cochran* v. *Schryner*, 12 Daly, 174; *Misch* v. *O'Hara*, 9 Daly, 361.) Innkeepers had, at common law, no lien on property not belonging to the guest bringing it, unless it was a horse. A horse not belonging to the guest bringing it was subjected to a lien for the meat which it had eaten, and for nothing else. (*Skipwith* v. *Innkeeper*, 1 Bulst. 170; *Robinson* v. *Walter*, 3 Bulst. 269; *Stiet* v. *Drungold*, 15 Jac. B. R. 650; *Yorke* v. *Grenaugh*, 2 Ld. Raym. 866; *Kelly* v. *B. S. Bank*, 180 N. Y. 171; *Walbroke* v. *Griffin*, Moore, 876; *Rosse* v. *Bramsteed*, 2 Rolle, 439; *Com.* v. *York*, 9 Metc. 93; *Livingston* v. *Jefferson*, 1 Brock. 203; Jeremy on Carriers, 149; Willcock's Law of Inns, 78; *Poole* v. *Adkisson*, 1 Dana,

110; *Clayton* v. *Butterfield*, 10 Rich. Law, 300.) The Lien Law (§ 71) is unconstitutional so far as it relates to property of a stranger. (*McClain* v. *Williams*, 11 S. D. 227; *Peet* v. *McGraw*, 25 Wend. 653; *Jones* v. *Morrill*, 42 Barb. 623; *Smith* v. *Keyes*, 2 T. & C. 650; *F. W. Co.* v. *A. T. W. Co.*, 61 App. Div. 296; *Milligan* v. *B. W. Co.*, 34 Misc. Rep. 55; *Camp* v. *Rogers*, 44 Conn. 291.)

*Willard N. Baylis* for respondent. Section 71 of the Lien Law in express terms gives the lien under which respondent claims, and in this worked no change in the existent law for it was merely declaratory of the common law on the subject long established in this state. (L. 1894, ch. 253; L. 1897, ch. 418; L. 1860, ch. 446; L. 1895, ch. 884.) Under the common law long in force in this state the lien of an innkeeper extends to all property brought to his inn by a guest, even though it belonged to another. (*Walbroke* v. *Griffith*, Moore, 876; *Mulliner* v. *Florence*, L. R. [3 Q. B. D.] 484; 1 Wait's Law & Practice [5th ed.], 655; 2 Parsons on Cont. [7th ed.] 156; Edwards on Bailments [3d ed.], 363, § 474; Schouler on Bailments [3d ed.], 327, § 326; *Trefall* v. *Borwick*, L. R. [10 Q. B. D.] 210; *Turrill* v. *Crawley*, L. R. [13 Q. B. D.] 201; *Snead* v. *Watkins*, C. B. R. [N. S. 1856] 266; *Gordon* v. *Silber*, L. R. [25 Q. B. D.] 492; *Manning* v. *Hollenbeck*, 27 Wis. 202; *Cook* v. *Kane*, 13 Ore. 482; *Black* v. *Brennan*, 5 Dana [Ky], 310; *Poole* v. *Adkisson*, 1 Dana [Ky.], 110; *S. Mfg. Co.* v. *Miller*, 52 Minn. 516.) The statute now passed and the doctrine of the common law which so long preceded are not inconsistent with nor repugnant to the provisions of the Constitution. (*People ex rel. Henderson* v. *Rochester*, 147 N. Y. 1; *Kerrigan* v. *Force*, 68 N. Y. 385; *People* v. *Wells*, 181 N. Y. 252; *McMahon* v. *Palmer*, 102 N. Y. 189; *Happy* v. *Mosher*, 48 N. Y. 317; *Hersee* v. *Porter*, 100 N. Y. 409; *Spencer* v. *McGowen*, 13 Wend. 257; *Van Rensselaer* v. *Snyder*, 13 N. Y. 303; *Conkey* v. *Hart*, 14 N. Y. 22; *Hand* v. *Ballou*, 12 N. Y. 541.)

CHASE, J. In 1898 and 1899 the defendant was the lessee and proprietor of a hotel for public entertainment known as "The Girard," in the city of New York. On August 23, 1898, one Carlisle came casually to said hotel as a guest, and so remained until March 15, 1899, inclusive. During said period she received food and lodging as a guest without any express agreement as to the period of entertainment or amount to be paid therefor. On March 15, 1899, she owed the defendant for accommodation, board, lodging and extras furnished at her request from day to day between August 23, 1898, and March 15, 1899, inclusive, the sum of $161.24, a part of which accrued on March 13 to 15, inclusive, 1899.

On March 15, 1899, she took a lease of certain apartments in said hotel for one year from that day, which apartments she in part furnished, and thereupon occupied the same and continued in the occupation thereof until June 25, 1899, taking her meals from time to time without agreement as to price in the restaurant of the defendant in said hotel. On June 25, 1899, she left said hotel owing the defendant $330.85, of which amount $161.24 accrued on and prior to March 15, 1899, as stated, and the balance was due for rent under said lease and for food and incidentals furnished in the defendant's restaurant between March 15 and June 25, 1899. The lease of said apartments contained a proviso that the defendant should have a lien on all of the effects and property brought into said hotel by said Carlisle for any indebtedness accrued or accruing to her.

The plaintiff is a domestic corporation engaged in the manufacture and sale of pianos. On March 13, 1899, the plaintiff delivered to said Carlisle at the defendant's hotel a piano belonging to it under a conditional contract of sale by the terms of which title thereto remained in the plaintiff until payment in full of the agreed price therefor, and in case of failure by said Carlisle to make any payment on said contract when due that said contract should at once terminate and the plaintiff become entitled to the immediate possession of the piano. Said Carlisle never paid the full purchase price of

said piano, and became in default under said contract on June 13, 1899, and she then notified the plaintiff that she surrendered said instrument and requested the plaintiff to call and remove it. On July 26, 1899, the plaintiff attempted to remove the piano from said hotel, but the defendant refused to permit its removal, claiming a lien thereon as a hotel and boarding-house keeper for the unpaid bills incurred by said Carlisle, and she retains the possession thereof.

On and after July 13, 1899, the plaintiff had the right to the possession of said piano, subject only to any rights that the defendant had by reason of the facts herein stated. The defendant did not know that said Carlisle was not the real owner of said piano or that the plaintiff had or claimed any rights or ownership therein until the demand was made therefor as herein stated. The plaintiff seeks to recover possession of said piano.

The parties agreed upon a statement of facts to be submitted to the court for the determination of their controversy pursuant to section 1279 of the Code of Civil Procedure. The Appellate Division of the Supreme Court directed judgment in favor of the defendant, dismissing the plaintiff's complaint, and judgment has been entered thereon, from which judgment the appeal is taken to this court.

In this State prior to 1897 the lien of an innkeeper rested wholly upon the common law. It was first declared by statute in the Lien Law (Laws of 1897, chapter 418, section 71), although the lien of an innkeeper was recognized in the act for the protection of boarding-house keepers (Laws of 1860, chapter 446), and the amendment thereto (Laws of 1876, chapter 319), the act relating to the surreptitious removal of baggage by a guest (Laws of 1867, chapter 677), the acts relating to the enforcement and foreclosure of an innkeeper's lien (Laws of 1869, chapter 738, Laws of 1879, chapter 530), the act extending the lien of an innkeeper (Laws of 1894, chapter 253), and in the act granting a lien to lodging-house keepers (Laws of 1895, chapter 884).

Section 71 of the Lien Law was amended by chapter 380

of the Laws of 1899, and as it read at the time of the submission of the controversy herein it provided as follows: "A keeper of a hotel, inn, boarding house or lodging house, except an emigrant lodging house, has a lien upon, while in possession, and may detain the baggage and other property brought upon their premises by a guest, boarder or lodger, for the proper charges due from him, on account of his accommodation, board and lodging, and such extras as are furnished at his request. If the keeper of such hotel, inn, boarding or lodging house knew that the property so brought upon his premises was not, when brought, legally in possession of such guest, boarder or lodger, or had notice that such property was not then the property of such guest, boarder or lodger, a lien thereon does not exist."

The provision in the lease by the defendant to Carlisle, by which Carlisle gave to the defendant a lien on all the effects and property brought by her into the hotel for any indebtedness accrued or accruing to the defendant, does not in any way affect the rights of the plaintiff herein, as it was in no way a party to it, and Carlisle could not, by contract with the defendant, transfer to her an interest in the property of a third person.

Upon the facts submitted, the defendant, by the express terms of the statute in effect at the times mentioned, has a lien upon the piano for the entire amount of her claim.

The plaintiff, however, claims that the statute is unconstitutional so far as it gives a lien on property of a person other than the guest. When the piano came into the possession of the defendant through her guest a part of the unpaid account had accrued; a part accrued thereafter while Carlisle remained a transient guest in the defendant's hotel, and the remaining part of the unpaid account accrued while Carlisle was the occupant of the apartments in the defendant's hotel as a guest at an agreed price per year. If the defendant had a lien on the piano for any part of the account claimed by her, she was entitled to retain possession of it, and the plaintiff's demand and claim for the possession of the piano cannot be sustained.

It is only necessary to consider whether an innkeeper has a lien on goods rightfully in the possession of a transient guest when such goods are the property of a third person.

Two questions arise for our consideration:

1. Did the common law of England, on and prior to the 19th day of April, 1775, give to an innkeeper a lien on goods owned by a third person in the rightful possession of a guest for the value of his guest's entertainment?

2. Apart from the question whether such lien was so given by the common law is the act so far as it gives a lien upon goods owned by a third person in the rightful possession of the guest, a violation of our Constitution?

Americans claim the common law of England as their natural heritage and shield. (Black's Constitutional Law, 9.) The universal principle (and the practice has conformed to it) has been that the common law is our birthright and inheritance, and that our ancestors brought hither with them upon their emigration all of it which was applicable to their situation. The whole structure of our present jurisprudence stands upon the original foundation of the common law. (1 Story on the Constitution, sec. 157.) The Continental Congress in its declaration of rights asserted that "The respective colonies are entitled to the common law of England."

In the first Constitution of this state, adopted in 1777, it is provided as follows: "And this convention doth further, in the name and by the authority of the good people of this state, ordain, determine and declare that such parts of the common law of England, and of the statute law of England and Great Britain, and of the acts of the legislature of the colony of New York, as together did form the law of the said colony on the 19th day of April, in the year of our Lord one thousand seven hundred and seventy-five, shall be and continue the law of this state, subject to such alterations and provisions as the legislature of this state shall, from time to time, make concerning the same.   *   *   *"  (Section 35.)

Substantially similar provisions were included in the second and third Constitutions of this state, and in the Constitution of

1894 (Article 1, section 16) it is provided as follows: "Such
parts of the common law and of the acts of the Legislature
of the colony of New York, as together did form the law of
the said colony, on the nineteenth day of April, one thousand
seven hundred and seventy-five  *  *  *  which have not
since expired, or been repealed or altered;  *  *  *  shall be
and continue the law of this state, subject to such alterations
as the legislature shall make concerning the same.   But all
such parts of the common law, and such of the said acts, or
parts thereof, as are repugnant to this Constitution, are hereby
abrogated."

The principles and rules of organized society found in the
English common law so far as applicable to our conditions
became and continue in force unless abrogated or modified by
express constitutional or statutory enactments.

Constitutions and statutes should be construed with refer-
ence to the doctrines of the common law.   (Black's Constitu-
tional Law, 69; American and English Encyclopedia of Law
[2d ed.], vol. 6, p. 270; 8 Cyc. 377, 383.)

In construing the constitutional and statutory provisions
which provide that a person shall not be deprived of life, lib-
erty or property without due process of law, it should not be
held that there was an intention by convention or legislature
to forbid or in any way affect the right to any lien upon
property which had been recognized and sustained by the
common law and thus by the law of the land.   The writers
in encyclopedias and text books with singular unanimity have
asserted that an innkeeper has a lien at common law upon all
goods in the rightful possession of his guest for the value of
the guest's entertainment.   From some of them we quote:

The American and English Encyclopedia of Law (2d ed.
vol. 16, p. 548) says: "Corresponding to the extraordinary
liabilities which the law imposes on innkeepers is the extra-
ordinary privilege of a lien on the effects of guests for the
amount of the reasonable charges for the guest's entertain-
ment.  *  *  *  It is essential to the existence of the lien
that the goods on which it is claimed should have been brought

to the inn by a person coming in the character of a guest, but it is not essential that the guest should in all cases be the owner of the goods."

The Encyclopedia of the Laws of England (Vol. 6, page 497) says: " He (an innkeeper) is entitled to a general lien upon all goods brought by the guest to the inn for the board and lodging of the guest and his servants and the keep of his horses."

The Cyclopedia of Law and Procedure (Vol. 22, page 1090) says: " Where a guest brings to an inn goods ostensibly his the lien of the innkeeper attaches to the goods although they were in fact the goods of a third person."

In Beale on Innkeepers and Hotels (Section 261, page 182) the language just quoted from the Cyclopedia of Law and Procedure is repeated.

In Wait's Law and Practice (5th ed. vol. 1, 655) it is said: " The law gives to any innkeeper a lien whether the goods are the property of the traveller or the property of third parties from whom it has been hired or even fraudulently taken or stolen, if the innkeeper has no notice of the wrong and acts honestly."

In Parsons on Contracts (7th ed. vol. 2, page 156) it is said: " An innkeeper has a lien on the property of the guest (not on his person) for the price of his entertainment even if he be an infant. And he has this lien on goods brought to him by a guest although they belong to another person."

In Overton on the Law of Liens (Section 123, page 150) it is said: " If property, goods, horses or the like are brought by a guest to an inn at which he obtains accommodations and leaves the property in custody of the innkeeper it seems the lien will attach thereto whether it belong to a guest or to a third person for whom the guest is bailee or indeed even if it had been stolen by the guest. For the innkeeper is bound to receive and entertain the guest, and when unaccompanied by any suspicions would not be justified in inquiring into the title to the property delivered by the guest to his possession. Possession is *prima facie* evidence of ownership."

In Edwards on the Law of Bailments (3d ed. sec. 474, page 363) it is said : " The relation of innkeeper and guest being established, the lien covers the goods, baggage and property of the guest and all such things as the guest brings with him ; it extends to whatever the guest brings and the innkeeper receives ; it is not limited to property of the guests or to things of material or intrinsic value. * * * The innkeeper is bound to receive the guest and cannot stop to investigate his title to the property he brings with him and it may be added he is also liable for the safekeeping of the goods though they may be the property of a third person."

In Jones on Liens (2nd ed. sec. 499, page 303, vol. 1) it is said : " Thus it has become the settled law with reference to this lien that there is no distinction between the goods of a guest and those of a third person brought by a guest and in good faith received by the innkeeper as the property of the guest. The innkeeper cannot investigate the title of property brought by his guests and is bound unless there is something to excite suspicion to receive not only his guest, but his horse or other property brought by him as belonging to him, because it is in his possession." And in section 501, page 304, it is said : " It is now settled, however, that the lien is not limited to such things as a guest ordinarily takes with him. An innkeeper who receives a piano in his character as innkeeper, believing it to be the property of his guest, is entitled · to a lien upon it for his guest's board and lodging although in fact the piano is the property of another person who had consigned it to the guest to sell on commission."

In Schouler on Bailments and Carriers (3rd ed. sec. 326, page 327) it is said : " The law grants him (the innkeeper) as security for unpaid charges a lien upon all movable property which the guest may have brought with him to the house and placed in the legal custody of the innkeeper as bailee. Even where the thing belonged to a third person and the guest himself had only a bailee's right therein or was an agent for the owner, the innkeeper's lien will attach provided only he received the property on the faith of the innkeeping

relation. And the innkeeper's knowledge·that the guest did not own the goods does not affect the case unless he knew that the possession was wrongful   *   *   *.   An innkeeper's rightful lien ought fairly to be coextensive with his liability for all such property of other persons."

In Story on Bailments (9th ed. sec. 476, page 446) it is said : " It has been said that the horse of a guest can be detained only for his own meals, and not for the meals and expenses of the guest. The reason is said to be that chattels are in the custody of the law for the debt which arises from the thing itself and not for any other debt due from the same party for the law is open to all such debts and doth not admit private persons to make reprisal. This may be correct as to all debts than the debt contracted by the party as a guest but there seems reason to doubt whether the lien of an innkeeper does not extend to all the goods which a guest has at an inn for all his expenses there. The general rule seems in favor of such a lien whether any expense has been incurred on the particular goods or not. The cases cited to support the opposite doctrine do not seem to justify it."

In Moncrieff on Liability of Innkeepers (pages 55 to 56) it is said : " An innkeeper has a lien for the reckoning of his guest upon all those goods for which he as innkeeper becomes liable. His lien is coextensive with his liability, neither wider nor narrower.   *   *   *   This lien will endure even as against a third party being the real owner provided that the innkeeper when he undertook the custody of the goods did not know that they did not belong to his guest."

In Cowen's Treatise (6th ed. vol. 1, page 359) it is said : " His (an innkeeper's lien) for the keeping of the horse or other property of his guest is valid as against the true owner although the guest did not own it and even when he stole it. if it was received and kept without knowledge of the facts."

In Wharton's Law of Innkeepers (page 118) it is said : " The innkeeper has, therefore, a lien upon all goods brought by a guest.   *   *   *   He is not bound to inquire whether his guest is the owner of goods he brings with him to the inn

but only whether he comes as a guest, but he is bound to receive the goods whatever their nature provided he has sufficient accommodation and has, therefore, a lien upon such goods which cannot be defeated even by the true owner."

In a note to *Calyes' Case* (1 Smith's Leading Cases, 10th ed. page 11) it is said : " By the common law an innkeeper has a lien upon all the goods of the guest brought to the inn for board and lodging furnished by him to the guest at the request of the latter. And this is so although the goods may not be the property of the guest but belong to some third person provided the innkeeper is not aware that the goods are not the property of the guest."

The appellant admits that the courts of this state and of England, and the text book writers, without material exception hold that an innkeeper has at common law the right to retain all of the goods brought by a guest to his possession as security for the payment of his charges for the accommodation of the guest, and that it is not necessary for the innkeeper to make inquiry as to the ownership of the goods so brought by a guest into his possession ; but he asserts that this is the modern rule, and not the rule of the common law of England prior to 1775. He claims that the modern rule was first asserted in England in 1856 (*Snead* v. *Watkins*, 1 C. B. [N. S.] 267), and in this country in 1864 (*Jones* v. *Morrill*, 42 Barb. 623).

A brief general reference to the common law will aid in considering how we are to determine what a rule of such common law was at a given time. The common law of England is of great antiquity. It consists of rules established by custom. These rules, affected as they were in their inception by the views, habits and necessities of the different peoples which mingled in the early history of the Britons were principally retained in memory and handed down from person to person and from generation to generation until by custom they became the unwritten law of the realm. Some of these rules are stated in the earliest Codes prepared by the Saxon law givers, and some are stated in subsequent reported

decisions in contested cases. The printed reports of cases decided for many years subsequent to the discontinuance of the Year Books were prepared by unofficial reporters and consisted of such cases as were selected by them for that purpose and the same case was sometimes reported by more than one person and many of the cases so reported were contradictory and unsatisfactory. It is obvious that where a particular custom was not stated in the report of a decision in a contested case or where the custom in such case was not stated by the writings of men learned in the law it rested wholly in memory or a generally recognized tradition. The digests and even the treatises on legal subjects then as now followed principally along the lines of the reported decisions, and it is not even in recent years an uncommon thing to discover that a custom or principle of law of common knowledge has never been stated in a reported case. Where recognized printed reports of the English courts prior to 1775 show that the common law on any particular subject was by such case established and determined as therein stated such reports are the best and highest evidence of such common law. Where the rules of the common law relating to a matter under consideration are not expressly stated in the reported cases of the English courts prior to 1775, the statement of the courts of this country and of England subsequent to that time, especially when they do not purport to modify the common law, are not only entitled to careful consideration, but to great weight in determining the common-law rule prior to 1775. An unreserved statement by a court as to the common-law rule will, in the absence of other authority, be assumed to be based upon custom and the unwritten law long antedating such time.

Our courts have frequently asserted that at common law an innkeeper has a lien upon the goods of his guest although such goods are the property of a third person. (*Jones* v. *Morrill, supra; Betts* v. *Salisbury*, 12 Alb. L. J. 337; *Grinnell* v. *Cook*, 3 Hill, 485; *Ingallsbee* v. *Wood*, 36 Barb. 452; *Briggs* v. *Todd*, 28 Misc. Rep. 208; *Wilkins* v. *Earle*,

3 Robt. 368; *S. C.*, 44 N. Y. 172; *Smith* v. *Keyes*, 2 T. & C. 650; *Hulett* v. *Swift*, 33 N. Y. 571; *Peet* v. *McGraw*, 25 Wend. 653.)

The common-law rule in England and its ancient origin is stated by Lord Esher, master of the rolls, in *Robins* v. *Grey* (L. R. [2 Q. B. Div. 1895], 501, as follows:

"I have no doubt about this case. I protest against being asked, upon some new discovery as to the law of innkeeper's lien, to disturb a well-known and very large business carried on in this country for centuries. The duties, liabilities and rights of innkeepers with respect to goods brought to inns by guests are founded not upon bailment, or pledge, or contract, but upon the custom of the realm with regard to innkeepers. Their rights and liabilities are dependent upon that and that alone; they do not come under any other head of law. What is the liability of an innkeeper in this respect? If a traveler comes to an inn with goods which are his luggage — I do not say his personal luggage but his luggage — the innkeeper by the law of the land is bound to take him and his luggage in. The innkeeper cannot discriminate and say that he will take in the traveler but not his luggage. If the traveler brought something exceptional which is not luggage — such as a tiger or a package of dynamite — the innkeeper might refuse to take it in; but the custom of the realm is that unless there is some reason to the contrary in the exceptional character of the things brought he must take in the traveler and his goods. He has not to inquire whether the goods are the property of the person who brings them or some other person. If he does so inquire, the traveler may refuse to tell him, and may say, 'What business is that of yours? I bring the goods here as my luggage, and I insist upon your taking them in,' and then the innkeeper is bound by law to take them in, or he may say: 'They are not my property, but I bring them here as my luggage and I insist upon your taking them in.' * * * Then the innkeeper's liability is not that of bailee or pledgee of goods; he is bound to keep them safely. It signifies not, so far as that obligation is

concerned, if they are stolen by burglars, or by servants of the inn, or by another guest, he is liable for not keeping them safely unless they are lost by the fault of the traveler himself. That is a tremendous liability; it is a liability fixed upon the innkeeper by the fact that he has taken the goods in, and by law he has a lien upon them for the expense of keeping them as well as for the cost of the food and entertainment of the traveler. By law that lien can be enforced not only as against the person who has brought the goods to the inn, but against the real and true owner of them. That has been the law for two or three hundred years; but to day some expressions used by judges, and some questions (immaterial as it seems to me) which have been left to juries, are relied on to establish that if the innkeeper knows that the goods are not the goods of the person who brings them to the inn he may refuse to take them in; or if he does take them in he has no lien upon them. * * * Now, is there any decided case in which it has been held that, although they have been brought to an inn as the luggage of the traveller and received as such by the innkeeper, he has no lien upon them if he knows that they are not the goods of the traveller? There is not one such case to be found in the books * * * If we were to accede to the argument for the appellants we should be making a new law, and our decision would produce in very many cases great confusion and hardship. I am of opinion that an innkeeper is bound to take in goods with which a person who comes to the inn is travelling as his goods, unless they are of an exceptional character; that the innkeeper's lien attaches, and that the question of whose property they are, or of the innkeeper's knowledge as to whose property they are, is immaterial."

It is assumed by counsel that there were but four cases (and we have found no more) reported from the English courts prior to 1775 involving the right of an innkeeper to retain, until his charges were paid, the property of a third person in the possession of his guest. These cases are *Skip-with* v. —— *the Innkeeper* (1 Bulst. 170 [1612]); *Robinson* v.

*Walter* (3 Bulstrode, 269 ; Popham, 127 ; 1 Rolle Rep. 449 [1617]) ; *Stirt* v. *Drungold* (14 Jac. B. R. 650 [1617]) and *York* v. *Grindstone* (1 Salkeld, 388 ; 2 Lord Raymond, 866 [1703]).

Each of the cases so reported is a claim of lien for the keep of a horse which had been brought to the inkeeper by one not the owner thereof. In the first case it does not clearly appear that the person who brought the horse to the inn was personally a guest of the innkeeper. The chief justice being absent, the other members of the court were evenly divided upon the question as to whether the innkeeper could retain the horse until he be paid and satisfied for his meat. The lien was asserted for the reason, and two of the judges held " That the innkeeper here is not bound to take knowledge of the true owner of this horse thus left to stand in his inn at hay by another."

In the second case the claim of lien is wholly for the keep of the horse against which the lien is claimed. The horse had been left with the innkeeper for half a year and it was resolved by the court " That the defendant's plea was good for the innkeeper was compellable to keep the horse and not bound at his peril to take notice of the owner of the horse. And by the custom of Lond. if a horse be brought to a common inn where he hath (as it is commonly said) eaten out his head it is lawful for the innkeeper to sell him,   *   *   *   and there is a difference where the law compels a man to do a thing and where not."

In one of the reports it appears that one of the judges, in addition to holding that the innkeeper was entitled to a lien because he was compelled to receive the horse, also said that " The owner would have had to find meat for his horse and for that reason it is right he should satisfy it now to the innkeeper for he will not be to a greater charge then he must have been if he himself had fed him."

In the third case a horse, saddle, bridle and saddle cloth were brought to the inn. The innkeeper claimed a lien on the horse for its keep which claim was sustained ; the report

further says : " But some question was made whether he might retain the saddle, bridle and cloth as well as the horse."

And in the fourth case the lien was sustained upon the ground that the innkeeper was bound to receive and entertain guests and, therefore, might detain the goods of guests till payment.

The question as to an innkeeper's general lien upon all the goods and property in the possession of his guest was not litigated and is not determined in either of said four cases. The decision in each of said cases is principally important at this time because of the reasons given for sustaining the lien. We have seen that while in each of the four cases the lien could have been sustained as a special and particular lien, it was also and principally sustained because of the fact that an innkeeper is compelled to receive a guest and his goods and is not required to make inquiry as to the true owner of the goods so in the possession of his guest and that because he is so bound to receive the guest and his goods he is allowed a lien for his reasonable charges in connection therewith. In the early decisions there is some confusion as to whether an innkeeper had a general lien for his charges on the goods brought by a guest to the inn or whether the lien was solely upon the particular property benefited or preserved. The special or particular lien as distinguished from a general lien is based upon the benefit derived by the owner of the particular property in having it improved or preserved as in the case of a disabled or derelict ship at sea, in which case salvage is allowed. Where the lien is based upon the fact that the person or property has been benefited or preserved by the innkeeper in furnishing accommodation and food therefor, the ownership of the property is immaterial. The lien extends only to the property benefited or preserved even if it is brought to the inn by the owner. Little if any claim on which to base a particular lien could be made against inanimate objects. Such a lien would not answer the demands of public policy in the case of an innkeeper and his guest. The liability of an innkeeper at common law as a bailee is not questioned.

Public policy required that an innkeeper should receive as guests all travelers applying to him for accommodation together with the luggage and property in their possession. The innkeeper became responsible for the personal safety of the guest and an insurer of the luggage and personal property in his possession against all loss and damage not occasioned by the act of God, the public enemy or the negligence of the guest himself. From a time prior to 1775 the general lien of an innkeeper upon the goods owned by the guest has been conceded and it is not now disputed by the appellant. The reason for the general lien is as applicable against the property of third persons in the possession of the guest as against the property of the guest himself. Because the innkeeper was compelled to receive the traveler and accept the extraordinary liability which extends not only to the luggage and personal property owned by the traveler but to the luggage and personal property in his possession although owned by another, it was necessary to give to the innkeeper a compensatory lien for his charges to make the maintenance of inns desirable. The extraordinary liability and the lien are concurrent, and go hand in hand, and together make up the rule founded on public policy.

The four old cases especially called to our attention recognize the reason for the rule and to that extent justify the claim that such lien was given even against the property of third persons prior to 1775. In no one of the cases reported since 1775 either in this state or in England where an alleged lien by an innkeeper against the goods of a third person has been sustained, has it been suggested that the court was thereby extending the common-law rule as it existed in England prior to 1775. In each case the lien is sustained upon the common law as it existed at the time the decision was made which rule could not then have existed except by reason of a custom which had continued for such a period of time that the memory of man runneth not to the contrary. The statutory rule adopted by this state in 1897 does not, in our judgment, extend the rule so far as it relates to the prop-

erty of a third person in the lawful possession of a guest beyond the rule of the common law as it existed prior to 1775.

The reason for the rigorous rule of the common law is well stated in *Crapo* v. *Rockwell* (48 Misc. Rep. 1). Although the conditions which existed when the rule was established at common law have materially changed, the same considerations of public policy justify the maintenance of the rule at the present time. So our courts have held from time to time. Thus in *Hulett* v. *Swift* (33 N. Y. 571), referring to the responsibility of an innkeeper for the safe keeping of property committed to his custody by a guest, this court say: "This custom like that in the kindred case of the common carrier had its origin in considerations of public policy. * * * The safeguards of which the law gave assurance to the wayfarer were akin to those which invested each English home with the legal security of a castle. * * * The considerations of public policy in which the rule had its origin forbid any relaxation of its rigor. * * * The growth of commerce and increased facilities of communication have so multiplied the class for whose security it was designed that its abrogation would be the removal of a safeguard against fraud in which almost every citizen has an immediate interest. * * * The traveller is entitled to claim entire safety for his goods as against the landlord who fixes his own measure of compensation and holds the property in pledge for the payment of his charges against the owner. * * * The rule is a salutary one and should be steadily and firmly upheld, subject to the statutory regulations for the protection of hotel proprietors from fraud and negligence on the part of their guests." (See *Wilkins* v. *Earle*, 44 N. Y. 172.)

In *Briggs* v. *Todd* (28 Misc. Rep. 210) it is said: "In the mammoth hotel of to-day with its numberless rooms, its army of servants, its incessant stream of arriving and departing transients, the property of the guest is at the mercy of many people. His own room is necessarily accessible to a number of the employees of the hotel where fraud or neglect may sub-

ject him to loss. He cannot prevent the injury and after he has suffered it he is powerless to detect or prove guilt. The stranger disappears, and the servants protest ignorance and innocence. \* \* \* Considerations of public policy which, in the interest of commercial prosperity and social welfare, require that intercourse in and between cities and towns be full, free and secure — preserve and reaffirm the wisdom of the ancient rule."

In *Adams* v. *New Jersey Steamboat Company* (151 N. Y. 163) this court sustained a recovery against the steamboat company for loss by a passenger of his personal effects, applying the rule of the common law as to liability between the plaintiff and the defendant in that case, and said: "No good reason is apparent for relaxing the rigid rule of the common law which applies as between innkeeper and guest since the same considerations of public policy apply to both relations."

The right which an innkeeper has to require payment in advance for the accommodation of a guest in view of the uncertain length of time that the guest may stay at the inn and the uncertainty in regard to what may be required by the guest in the way of accommodation from day to day is insufficient as a practical means of protection to the innkeeper. Unless the innkeeper's lien extends to all the luggage and goods which the guest brings to the inn, and for which the innkeeper becomes responsible as an insurer, an opportunity is afforded by which great fraud might be perpetrated upon the innkeeper through a relative or other person claiming the ownership of the luggage and goods in the possession of the guest. So long as public policy requires that an innkeeper be held to the extraordinary and severe responsibility prescribed by the common law, the same considerations of public policy require that the rule of the common law be retained in its entirety and that the innkeeper have a lien upon the luggage and goods in the possession of the guest for payment of his reasonable charges. All property is held subject to such general regulations as are necessary to the common good and the public welfare.

The courts have sustained a statute authorizing the seizure and sale of any goods or chattels in the possession of a tax debtor. (*Hersee* v. *Porter*, 100 N. Y. 403.) In that case this court said: "For the purpose of collecting the tax the actual ownership in contemplation of the statute follows the actual possession."

Distress for rent until abolished by statute (Chapter 374, Laws of 1846) was permitted even against the property of a stranger found on the demised premises.

The owner of real property who rents or permits it to be occupied by a tenant for the sale of intoxicating liquors may be subjected by statute to a personal liability to one injured in person or property by or in consequence of the intoxication of any person who obtained the liquor producing the intoxication (even lawfully) in whole or in part on such real property. (*Bertholf* v. *O'Reilly*, 74 N. Y. 509.)

A law subjecting the logs of one owner in a log boom to a lien for fees due a surveyor-general for surveying and scaling all the logs in the boom, including those of other owners, is valid. (*Lindsay & Phelps Co.* v. *Mullen*, 176 U. S. 126.)

This court is not now concerned in the provisions of the act in question except as herein stated. We have seen that the act does not extend the rule beyond that established at common law or beyond the requirements of public policy and the statute in so far as we have stated is, therefore, constitutional.

The judgment of the Appellate Division should be sustained, with costs.

CULLEN, Ch. J., GRAY, O'BRIEN, VANN, WERNER and WILLARD BARTLETT, JJ., concur.

Judgment affirmed.